190 N.J. Super. 358 (1983)
463 A.2d 950
PATRICIA MILCAREK, PLAINTIFF-APPELLANT,
v.
NATIONWIDE INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1983.
Decided May 19, 1983.
*360 Before Judges ARD, KING and McELROY.
Gary D. Ginsberg argued the cause for appellant (Nathan A. Friedman, attorney; Robert A. Silverman, on the brief).
Rocco J. Tedesco argued the cause for respondent (Vincent J. Pancari, attorney).
The opinion of the court was delivered by KING, J.A.D.
The dispute in this case results from the initial refusal of defendant Nationwide Insurance Company ("Nationwide") to pay Personal Injury Protection (PIP) benefits, medical bills, for an injury allegedly attributable to an automobile accident. After suit was brought, plaintiff succeeded in obtaining judgments for the amount of her claimed medical bills and 10% interest as provided by the statute in cases of nonpayment, N.J.S.A. 39:6A-5(c), and $1260 in counsel fees and costs. This appeal is taken from the summary judgment in defendant Nationwide's favor on Count Two of the complaint claiming "exemplary or punitive" damages because defendant "has refused to fulfill its contractual obligation to the plaintiff ... and ... has willfully, knowingly and in defiance of plaintiff's repeated protests and *361 notices acted maliciously and in wanton disregard of the rights of the plaintiff."
In February 1982 plaintiff filed a complaint alleging that Nationwide owed her PIP benefits under N.J.S.A. 39:6A-4 resulting from consequential injuries sustained on October 26, 1979 while she was a passenger in a car owned and driven by Francis Toner, defendant's insured. As a result of the accident plaintiff had sustained a comminuted fracture of the left femur, requiring hospitalization. By May 1980 her leg was healing well. Defendant had paid voluntarily all medical expenses to June 6, 1980 when plaintiff refractured her femur while getting down from a pinball machine on which she had been sitting in a night club. The x-rays showed "recent refracture of femur at site of old fracture." Nationwide originally rejected the claim for medical expenses arising from this June 1980 episode. Nationwide's claims attorney concluded "that the treatment and services arose from an injury which did not arise from an automobile accident" and were not compensable under the New Jersey no-fault law. Under our act medical expense benefits are payable by the PIP carrier to persons "who sustained bodily injury as a result of an accident ..., while occupying the automobile of the named insured." N.J.S.A. 39:6A-4. This legal causation issue was ultimately resolved against Nationwide by summary judgment on Count One of the present complaint and goes unchallenged on this appeal.
On Count Two the Law Division judge ruled that "there are no facts on which a jury could reasonably conclude that the actions of defendant would rise to the point of permitting punitive damages, ... [and] the law does not as of now contain a cause of action for punitive damages." We agree and affirm.
On this appeal plaintiff urges the adoption of a new theory of recovery in this state  punitive damages where a PIP carrier wrongfully refuses to pay a claim, in addition to the 10% statutory penalty, N.J.S.A. 39:6A-5(c), and counsel fees already recovered under R. 4:42-9(a)(6). Plaintiff seizes upon dicta in *362 several reported cases and urges that a "special relationship" existed which imposed a duty on her host driver's PIP carrier to pay punitive damages when it, in effect, broke its contract to pay her medical bills consequent upon her reinjury in June 1980.
In Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J. Super. 437 (App.Div.), certif. den. 71 N.J. 503 (1976), this court stated:
In the absence of exceptional circumstances dictated by the nature of the relationship between the parties or the duty imposed upon the wrongdoer, the concept of punitive damages has not been permitted in litigation involving breach of a commercial contract. [Citations omitted.]
* * * * * * * *
Several exceptions have been carved out to permit punitive damages in actions arising out of contract where the unusual relationship between the parties reflects a breach of trust beyond the mere breach of a commercial contract. For example, in states where an action for breach of contract of marriage is viable, punitive damages may be recovered. Lanigan v. Neely [4 Cal. App. 760, 89 P. 441 (Dist.Ct.App. 1907).] Similarly, an action against a public utility for failure to comply with its special statutory public duty, 5 Corbin, Contracts, § 1077 at 443, or an action by a depositor against his banker, Woody v. Nat'l Bank of Rocky Mount, [194 N.C. 549, 140 S.E. 150 (1927),] 5 Corbin, op. cit. § 1077 at 444, have been held to be in a class of exceptions to the general rule excluding recovery in contract actions. Other contractual litigation in which punitive damages are approved are those involving a fiduciary relationship such as an action by a seller against his real estate broker. Security Corp. v. Lehman Associates, Inc., 108 N.J. Super. 137 (App.Div. 1970); Brown v. Coates, [253 F.2d 36 (D.C. Cir.1958).] See also Annotation, Right of principal to recover punitive damages for agents' or brokers' breach of duty, 67 A.L.R.2d 952 (1959).
An intermediate appellate court of California allowed exemplary damages in a case by an assured against an insurance carrier on the theory that a bad faith refusal to make payments under a disability policy accompanied by false and threatening communications "sounds in tort notwithstanding that it may also constitute a breach of contract." Fletcher v. Western Nat'l Life Ins. Co., 10 Cal. App.3d 376, 89 Cal. Rptr. 78, 93 (D.Ct.App. 1970). The court emphasized the "special duty to plaintiff of good faith and fair dealing" which an insurer owes an insured in reaching its conclusion. [Citations omitted]. [Id. 141 N.J. Super. at 449-450.]
This court found that the facts in Sandler, which was not an insurance case, suggested that the claim was based purely on breach of a contract which created "no special relationship or duty beyond that arising out of any commercial transaction." Id. 141 N.J. Super. at 451. However, the court noted:

*363 We do not mean to conclude from the foregoing that the right to punitive damages should turn simply upon the form of action involved, namely, whether it is designated as a tort rather than a contract. There may arise a case involving such an aggravated set of facts that punitive damages might be appropriate regardless of the contract form of the cause of action and even though it may be beyond the scope of the recognized exceptions in the adjudicated cases. [Ibid.]
In Kocse v. Liberty Mut. Ins. Co., 152 N.J. Super. 371 (Law Div. 1977), the court considered whether defendant insurance company was liable for punitive damages where defendant determined that plaintiff's accident was not covered under the automobile liability policy issued to plaintiff's parents. Plaintiff in that case was driving his fiancee's car at the time of the accident. Defendant paid plaintiff PIP benefits, but it later questioned coverage when it became apparent that it might be liable, as an excess carrier, to other parties injured in the accident. It then conducted an investigation which resulted in a determination that the accident was not covered under its policy.
The Kocse court recognized the division among courts in this country on the question of whether punitive damages are allowable in actions involving insurance contracts, citing Annotation, "Insurer's liability for consequential or punitive damages for wrongful delay or refusal to make payments due under contracts," 47 A.L.R.3d 314, 339-348 (1973). Kocse, supra, 152 N.J. Super. at 377. The court stated that New Jersey may be following a trend toward allowing punitive damages more easily in contract actions, "at least where there is some form of special relationship existing between the parties." Id. at 378. The court further stated: "Such relationships surely would include the fiduciary relationship which has been held to exist between an insurer and its insured. However, the extent to which such a relationship exists between these parties has not been defined." Ibid. The court noted that a fiduciary relationship was found to exist between a liability insurer and its insured facing excess exposure in Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 492 (1974), but pointed out that this decision was based on the *364 court's reasoning that because of a policy provision prohibiting the insured from settling in its own behalf, the insurer had become the agent of the insured in this respect. Kocse, supra, 152 N.J. Super. at 378. The Kocse court then reasoned
It is questionable whether such reasoning could be applied to all of the dealings between the parties. The mere presence of a fiduciary duty regarding one aspect of the insurance contract does not necessarily require that such a duty govern all aspects of the agreement. See Baxter v. Royal Indemn. Co., 285 So.2d 652 (Fla.D.Ct.App. 1973). Certainly, an insurer's task of determining whether the insurance policy provided coverage of an accident cannot be deemed to give rise to such a duty on the part of the insurer. The parties, in this respect, are merely dealing with one another as they would in a normal contractual situation. They are not acting as principal and agent. Thus, the company is only required to fulfill the ordinary contractual duties imposed by the insurance agreement. [Id. at 378-379.]
Relying on Sandler, supra, the court noted that, even in the absence of such a fiduciary duty, punitive damages might still be awardable if the case involved a sufficiently aggravated set of circumstances but found no such circumstances to be present in that case. Kocse, supra, 152 N.J. Super. at 379-381.
Although plaintiff here was technically not the "insured" under defendant's policy, once defendant was put on notice of the accident and its PIP responsibility to plaintiff, she in effect became "its direct insured vis-a-vis the payment of PIP benefits." Smelkinson v. Ethel & Mac Corp., 178 N.J. Super. 465, 472 (App.Div. 1981). As a result, the no-fault law imposed an affirmative duty upon defendant to deal fairly with plaintiff. Ibid. However, in our view, this does not mean that defendant was acting as agent for plaintiff in determining whether her second accident, the fall, entitled her to PIP benefits. We do not think defendant owed a fiduciary duty to plaintiff in this type of situation for purposes of falling within the special relationship exception to the general rule prohibiting the award of punitive damages in contract cases. Nor does this case involve such an aggravated set of circumstances as to call for departure from the general rule. For some examples of the claimed trend in recent years by both courts and legislatures to award punitive damages in particularly vexatious cases of contractual *365 breach, see Farnsworth, Contracts, § 12.8 at 842-844 (1982). We do not see the case before us as anything more than a traditional breach of contract grounded in a mistaken notion of legal duty.
Plaintiff also argues that Nationwide's conduct constituted a violation of the insurance laws of this state and that punitive damages should be allowed for such violations.
N.J.S.A. 39:6A-5 provides, in pertinent part:
b. Personal injury protection coverage benefits shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same. If such written notice is not furnished to the insurer as to the entire claim, any partial amount supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer. Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer; provided, however, that any payment shall not be deemed overdue where the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer....
c. All overdue payments shall bear simple interest at the rate of 10% per annum.
Defendant does not here contest the Law Division's determination that it was obligated to pay PIP benefits to plaintiff for the injuries sustained in the second, June 1980 accident. The effect of that determination is that defendant wrongfully denied coverage and the payment of benefits was therefore overdue.
Even assuming the doubtful proposition that under the law of this state claims for punitive damages should be generally allowed based on a defendant's violation of a statute, the question then is whether, in the specific context of a PIP claim, the provision for 10% interest on all overdue payments in N.J.S.A. 39:6A-5(c) was intended as the exclusive remedy for an aggrieved plaintiff, thereby precluding an award of punitive damages. Defendant argues that this provision as well as R. 4:42-9(a)(6), allowing a successful claimant counsel fees in an action upon an insurance policy, constitute plaintiff's exclusive remedies. Plaintiff resists this suggestion, arguing that the *366 provision for interest is compensatory in nature and therefore does not serve the same purpose as punitive damages.
It is well established that the purpose of the no-fault law is to provide for the "prompt payment of medical expenses, lost wages, essential services, survivor benefits and funeral expenses to certain classes of persons injured in an automobile accident without regard to negligence, liability or fault and without having to await the outcome of protracted litigation." Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475, 479 (App.Div. 1976). N.J.S.A. 39:6A-16 provides that the act "shall be liberally construed so as to effect the purpose thereof."
In Hopkins v. Liberty Mut. Ins. Co., 158 N.J. Super. 176 (App.Div.), supplementing 156 N.J. Super. 72 (App.Div. 1978), this court explained the operation of N.J.S.A. 39:6A-5(b) and (c) as follows:
... Although N.J.S.A. 39:6A-5(b) and (c) speak in mandatory terms as to the allowance of interest at the rate of 10% per annum, discretion is imported into this enactment by the provision excusing payment of the statutory rate of interest where the insurer "has reasonable proof to establish that the insurer is not responsible for the payment...." Hence, where a court determines that a tendered defense to payment is of such substance that its validity should be judicially settled, payment of interest at the statutory rate, which is in excess of the legal rate of interest, is excused. We do not conceive Ortiz v. Safeco Ins. Co., 144 N.J. Super. 506 (App.Div. 1976), certif. den. 73 N.J. 63 (1977), as taking a contrary view. We agree with Ortiz that the subjective good faith of the carrier in interposing a defense to payment is immaterial. Rather, the determining factor is the objective merit of the defense, whatever way it is ultimately decided  not the good or bad faith of the carrier in asserting it. Hence, a frivolous defense tendered in complete good faith as to its validity will not be held to excuse payment of the statutory interest. [Id. at 178-179.]
This court further determined that this statute did not impliedly prohibit the assessment of prejudgment interest when it is determined that payment of the statutory rate of interest will be excused. Id. at 179.
In Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 454 (1977), the Supreme Court explained the purpose of punitive damages: "Punitive or exemplary damages are sums awarded apart from compensatory damages and are assessed when the wrongdoer's conduct is especially egregious. They are awarded *367 upon a theory of punishment to the offender for aggravated misconduct and to deter such conduct in the future." Thus, while the essence of an award of punitive damages is the bad faith of defendant, the good or bad faith of defendant is irrelevant in determining whether the statutory rate of interest will be exacted. Yet, arguably, the requirement of paying 10% interest on overdue payments, like punitive damages, serves in some measure to deter insurance companies from declining to make the necessary payments where they have no reasonable basis for such action.
Although this issue has not been decided by the courts in this state, the Pennsylvania courts have considered a similar question arising under their no-fault law. Like New Jersey's, the Pennsylvania statute does not specifically provide for an award of punitive damages, but it contains a section providing that no-fault benefits are overdue if not paid within 30 days after "reasonable proof of the fact and amount of loss sustained" is submitted to the insurer. 40 P.S. § 1009.106(a)(2) (1974). The statute further provides: "Overdue payments bear interest at the rate of eighteen per cent (18%) per annum." Ibid. Another section of the act permits the award of counsel fees to the successful claimant when the court determines that the insurer's denial of benefits was "without reasonable foundation." 40 P.S. § 1009.107(3) (1974).
In Smith v. Harleysville Ins. Co., 494 Pa. 515, 431 A.2d 974 (1981), the Pennsylvania Supreme Court decided that an insurance company could not be liable in punitive damages for wrongful failure to pay a PIP claim, saying:
In any event, this Court has concluded in D'Ambrosio [v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 494 Pa. 501, 431 A.2d 966 (1981),] that there is no basis for the judicial creation of a cause of action for bad faith conduct. As stated in D'Ambrosio,

"[t]here is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act [Act of July 22, 1974, P.L. 589, § 1 et seq., 40 P.S. § 1171.1 et seq (Supp. 1980)], must be supplemented by a judicially created cause of action. As one critic of California's approach has observed,

*368 `[t]he California courts have created this "new tort" in an obvious attempt to afford more protection to insureds. However, it has not really been established that there is a need of this additional protection. * * * State insurance departments are intended to serve the public and handle complaints from insureds as to insurer practices on a regular basis. Likewise, state legislatures are capable of prohibiting what are considered to be unfair claims handling practices and of imposing penalties for violations.'
Kircher, Insurer's Mistaken Judgment  A New Tort?, 59 Marq.L.Rev. 775, 786 (1976). Surely it is for the Legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers. In our view it is equally for the Legislature to determine whether sanctions beyond those created under the Act are required to deter conduct which is less than scrupulous."
494 Pa. at 507-08, 431 A.2d at 970. [431 A.2d at 975.]
See also Sexton v. Wilson, 304 Pa.Super. 62, 450 A.2d 101 (Super.Ct. 1982); Myers v. USAA Cas. Ins. Co., 298 Pa.Super. 366, 444 A.2d 1217 (Super.Ct. 1982). Moreover, like Pennsylvania's, the New Jersey Legislature has adopted a method for deterring unfair insurance practices under N.J.S.A. 17:29B-1 et seq. N.J.S.A. 17:29B-4(9)(d) declares the general business practice of an insurance company of "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information" to be an unfair claim-settlement practice. Of course, such alleged violations are resolved before the Commissioner of Insurance and the monetary penalty provided would not go to the parties aggrieved by the insurer's actions. N.J.S.A. 17:29B-5, N.J.S.A. 17:29B-6 and N.J.S.A. 17:29B-7. Nevertheless, this act punishes insurance companies for unreasonably denying claims, thereby also serving as a deterrent. Hence, with the other remedies available in this state with respect to insurance companies, we do not think it is necessary or wise to subject them also to a claim for punitive damages for contractual breach.
The Minnesota Supreme Court has also prohibited a claim for punitive damages under its no-fault law. Haagenson v. Nat. Farmers U. Property & Cas., 277 N.W.2d 648, 652-653 (Minn. Sup.Ct. 1979). The court in that case rejected the argument that the insurer's intentional breach of the contract or its intentional violation of the no-fault statute constituted an independent tort *369 for which punitive damages were recoverable. Ibid. The court noted, however, that the act itself provided a remedy for non-payment of benefits, namely the 10% interest assessment. Id. at 653.
Other jurisdictions to date denying punitive damage claims in PIP actions include Florida, Michigan, Oregon and Delaware. In Shupack v. Allstate Ins. Co., 367 So.2d 1103 (Fla. Dist. Ct. App. 1979), plaintiff was denied the right to seek punitive damages for the insurer's alleged bad faith refusal to pay PIP benefits. The court noted that the relationship of "the parties [was] more in the nature of a debtor-creditor or adversary relationship than in a fiduciary relationship." Id. at 1104. The Florida statute provided for interest and attorney's fees upon an insurer's failure to pay. Ibid. See also Schaible v. Michigan Mut. Ins. Co., 116 Mich. App. 116, 321 N.W.2d 860 (Ct.App. 1982); Jerome v. Michigan Mut. Auto Ins. Co., 100 Mich. App. 685, 300 N.W.2d 371 (Ct.App. 1980). The Oregon appellate court disallowed punitive damages for failure to pay PIP benefits, finding no such "egregious conduct" as would give rise to a tort action. Porter v. Utah Home Fire Ins. Co., 58 Or. App. 729, 650 P.2d 130, 135 (Ct.App. 1982). See also Casson v. Nationwide Ins. Co., 455 A.2d 361 (Del. Super. Ct. 1982).
In contrast, Georgia's no-fault statute specifically provides for punitive damages based on an insurer's failure to make prompt payments or upon refusal of a claim. Atlanta Cas. Co. v. Jones, 247 Ga. 238, 275 S.E.2d 328, 331-332 (Sup.Ct. 1981). See also Robertsen v. State Farm Mut. Auto. Ins. Co., 464 F. Supp. 876, 883-886 (D.S.C. 1979) (holding that the South Carolina courts would recognize a cause of action for an insurer's willful and reckless or bad faith refusal to pay a PIP claim).
Plaintiff also contends that defendant's willful failure to pay benefits constituted a tort, namely, the intentional infliction of emotional distress. While a few jurisdictions may recognize such a cause of action in the context of an insurer's failure to pay a claim, e.g., Fletcher v. Western Nat'l Life Ins. Co., 10 *370 Cal. App.3d 376, 89 Cal. Rptr. 78 (Ct.App. 1970), we decline on this record to do so.
Appellant's attempt to establish what we perceive as a new cause of action for damages for breach of an insurance contract must be directed to our highest court. We see no clear indication in our current jurisprudence that our Supreme Court would sanction such a cause of action. The Michigan, Kansas, and Pennsylvania Supreme Courts recently have rejected this contention. Kewin v. Massachusetts Mut. Life Ins. Co., 409 Mich. 401, 295 N.W.2d 50 (1980); see also Zimmerman v. Michigan Hospital Service, 96 Mich. App. 464, 292 N.W.2d 236 (Ct.App. 1980); Spencer v. Aetna Life & Cas. Ins. Co., 227 Kan. 914, 611 P.2d 149 (1980); D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 494 Pa. 501, 431 A.2d 966 (1981).
Affirmed.