198 N.J. Super. 115 (1984)
486 A.2d 879
EDWARD KUBIAK, PLAINTIFF-APPELLANT,
v.
ALLSTATE INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 29, 1984.
Decided December 19, 1984.
*116 Before Judges McELROY, DREIER and SHEBELL.
Capizola & Fineman, P.A., attorneys for appellant; Darrell Fineman, on the brief.
William P. Doherty, Jr., attorney for respondent.
The opinion of the court was delivered by SHEBELL, J.A.D.
This appeal from the entry of summary judgment again raises the issue of whether an insurance carrier may be liable for punitive damages for breach of its obligation to pay personal injury protection benefits.
*117 Plaintiff, a quadraplegic, seeks punitive damages through an amended verified complaint alleging:
2. On September 15, 1982, Charles O'Laughlin, adjuster in charge of this matter for Defendant Allstate, called plaintiff's attorney and advised him that he has not worked on this case for five months because he has been busy with other matters.
3. The conduct of Defendant Allstate Insurance Company in this matter is of such a nature to give rise to willful disregard of its insured's rights, a helpless quadraplegic, jeopardizing his care, and gives rise to the imposition of punitive damages.
The Law Division issued an order to show cause based on the amended complaint and directed defendant to answer the complaint within 30 days. On the adjourned return date of the order counsel for both parties informed the court that all claims made in the first count of plaintiff's complaint had been resolved and Allstate would make all PIP payments when due. The show cause order was dismissed with the reservation that the claim for punitive damages would be tried according to the court's normal trial schedule.
Defendant moved for summary judgment on the second count. Its motion was granted pursuant to R. 1:6-2 and the court issued a letter decision, stating:
My decision is based on the reasoning set forth in Milcarek v. Nationwide Ins. Co., 190 N.J. Super. 358 (App.Div. 1983).
Although the plaintiff's contention is somewhat unique due to the facts as set forth within his affidavit, I believe that it is the responsibility of the Appellate Division to determine whether the facts of this case constitute a special fiduciary relationship which might subject the defendant to a claim for punitive damages. It certainly is not the provence [sic] of the trial court to determine if the facts of this case fall within the ambit of a special relationship as referred to by Judge King.
Plaintiff, an insured of the defendant, was a passenger in a vehicle which left the roadway and struck a tree. The driver was killed. Plaintiff suffered a broken neck and spinal cord damage rendering him a quadraplegic. Defendant investigated the claim and acknowledged its obligation to pay PIP benefits. It undertook payments on a basis which plaintiff complains was neither consistent nor regular. Between June 1981 and August 1982 counsel for plaintiff directed 23 letters demanding payment. *118 Defendant's records reveal that payments were initially made within four to eight weeks after presentation of each claim but payments ceased on or about June 25, 1982 and only began again after institution of suit. That payment record reveals no payments between June 25, 1982 and October 4, 1982 although it shows that 38 bills for care were received from the providers of services.
Plaintiff maintains that a prima facie case for punitive damages arises against an insurer when a "special relationship" has developed between the insured and insurer and the insurer breaches that relationship by either a deliberate act or an act accompanied by reckless and wanton disregard for the rights of its insured.
Milcarek found no such fiduciary duty between the PIP beneficiary and the PIP carrier in the situation in that case as would fall within the special relationship exception to the general rule prohibiting the award of punitive damages in contract cases, 190 N.J. Super. at 362-65. The court went on to specifically examine the fundamental question of whether a court should impose the remedy of punitive damages for breach of the legislatively created duty to provide PIP benefits. It stated:
Even assuming the doubtful proposition that under the law of this state claims for punitive damages should be generally allowed based on a defendant's violation of a statute, the question then is whether, in the specific context of a PIP claim, the provision for 10% interest on all overdue payments in N.J.S.A. 39:6A-5(c) was intended as the exclusive remedy for an aggrieved plaintiff, thereby precluding an award of punitive damages. [190 N.J. Super. at 365 (emphasis ours)]
The court reviewed the varying case law of other states confronted with the same issue and adopted the position of the Pennsylvania Supreme Court as announced in Smith v. Harleysville Ins. Co., 494 Pa. 515, 431 A.2d 974 (1981) (per curiam) which denied liability for punitive damages for wilful failure to pay a PIP claim. The Pennsylvania tribunal stated:
In any event, this Court has concluded in D'Ambrosio [v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 494 Pa. 501, 431 A.2d 966 (1981)] that there is no basis for *119 the judicial creation of a cause of action for bad faith conduct. As stated in D'Ambrosio,

`[t]here is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act [(Act of July 22, 1974, P.L. 589, § 1 et seq., 40 P.S. § 1171.1 et seq. (Supp. 1980)], must be supplemented by a judicially created cause of action. As one critic of California's approach has observed,
"[t]he California courts have created this `new tort' in an obvious attempt to afford more protection to insureds. However, it has not really been established that there is a need of this additional protection.... State insurance departments are intended to serve the public and handle complaints from insureds as to insurer practices on a regular basis. Likewise, state legislatures are capable of prohibiting what are considered to be unfair claims handling practices and of imposing penalties for violations."
Kircher, Insurer's Mistaken Judgment  A New Tort?, 59 Marq.L.Rev. 775, 786 (1976). Surely it is for the Legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers. In our view it is equally for the Legislature to determine whether sanctions beyond those created under the Act are required to deter conduct which is less than scrupulous.' 494 Pa. at 507-08, 431 A.2d at 970. [431 A.2d at 975.]
The Milcarek Court thus concluded:
... the New Jersey Legislature has adopted a method for deterring unfair insurance practices under N.J.S.A. 17:29B-1 et seq.... [T]his act punishes insurance companies for unreasonably denying claims, thereby also serving as a deterrent. Hence, with the other remedies available in this state with respect to insurance companies, we do not think it is necessary or wise to subject them also to a claim for punitive damages for contractual breach. [190 N.J. Super. at 368 (emphasis ours)]
An aggrieved PIP claimant is entitled to receive "prompt payment of medical expenses, lost wages, essential services, survivor benefits and funeral expenses ... without having to await the outcome of protracted litigation." Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475, 479 (App.Div. 1976). Our Legislature has provided the means for expediting PIP disputes and protecting "the rights of all parties" to such disputes by establishing a right to petition the courts for an order which may be entered "on motion for good cause shown." N.J.S.A. 39:6A-13. This, together with the right to interest on overdue payments (N.J.S.A. 39:6A-5c) and the ability under R. 4:42-9(a)(6) to recover counsel fees if successful in the action should sufficiently guard against a situations where an injured *120 party is subjected to protracted aggravated consequences because of an insurer's failure to pay.
The facts presented here, in our view, would not warrant jury consideration even if punitive damages were to be allowed in cases involving sufficiently aggravated circumstances beyond the simple breach of the PIP insurance contract. See Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J. Super. 437, 449-50 (App.Div. 1976), certif. den. 71 N.J. 503 (1976) and Kocse v. Liberty Mut. Ins. Co., 152 N.J. Super. 371, 379-81 (Law Div. 1977). The motion judge correctly concluded that our holding in Milcarek precluded recovery under the facts presented.
More than 17 months have passed since Milcarek was published and the Legislature has taken no action to provide the remedy plaintiff seeks. We see no reason to change our position.
We affirm.