216 N.J. Super. 705 (1987)
524 A.2d 886
JOSEPH E. BUCKLEY, JR., PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
TRENTON SAVING FUND SOCIETY, DEFENDANT-APPELLANT, CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1987.
Decided April 9, 1987.
*706 Before Judges DREIER, SHEBELL and STERN.
Michael J. Nizolek argued the cause on behalf of appellant (Backes, Waldron & Hill, attorneys; Michael J. Nizolek on the brief).
Timothy J. Korzun argued the cause on behalf of respondent (Buckley, Sheak & Korzun, attorneys; Timothy J. Korzun on the brief).
Pfaltz & Woller filed a brief amicus curiae on behalf of New Jersey Council of Savings Institutions (Hugo M. Pfaltz, Jr., of counsel; Alice Milmed Haller on the brief).
The opinion of the court was delivered by STERN, J.A.D.
*707 Defendant bank wrongfully dishonored[1] two checks plaintiff wrote to his wife drawn on plaintiff's account with defendant bank. Soon after the checks were dishonored, plaintiff received calls from his wife, from whom he was separated, and from his sister, parents, children and best friend inquiring why he was not providing the necessary means to purchase food for his family. Plaintiff alleged that these telephone calls caused him emotional distress. The checks were dishonored on January 14, 1984 and March 9, 1984 because Mrs. Buckley did not have an account with the bank. The bank claimed it was attempting to induce those who cash checks at its branches to open accounts and that there was no malice directed at plaintiff or his wife.
Plaintiff's complaint contends that defendant "intended to maliciously inflict extreme emotional distress" on plaintiff and his wife by dishonoring plaintiff's checks (first claim for relief); that defendant committed "fraudulently false and malicious actions" by not honoring the checks (second claim); that defendant "breached its contract with plaintiff, and dealt in bad faith with plaintiff in a total reckless and wanton disregard of plaintiff's obligations" (third claim); that "[d]efendant invaded the plaintiff's right to privacy" (fourth claim), and that "[d]efendant negligently inflicted emotional distress upon plaintiff" (fifth claim). Based upon defendant's alleged conduct, plaintiff demanded "compensatory damages, consequential damages, special damages, punitive damages, reasonable attorneys fees, costs of suit, and interest."
*708 At the close of the evidence, defendant unsuccessfully moved to dismiss count one, the claim in which plaintiff sought recovery for intentional infliction of emotional distress. The judge, however, dismissed plaintiff's claims for relief based on fraud (count two) and invasion of privacy (count four). The parties stipulated that the claim for negligent infliction of emotional distress (count five) be dismissed, and the judge granted defendant's motion to strike plaintiff's claim for punitive damages.[2]
The jury returned a unanimous verdict in favor of plaintiff for $25,000. Defendant's subsequent motion for judgment notwithstanding the verdict or, alternatively, a new trial, was denied. The judge also declined to grant a remittitur and denied plaintiff's application for prejudgment interest.
Defendant appeals from the denial of its motion for judgment notwithstanding the verdict or a new trial. Plaintiff cross-appeals from the judge's failure to charge the jury as to punitive damages, dismissal of the cause of action for fraud and denial of prejudgment interest.

I.
Plaintiff opened a personal checking account with defendant in 1975. Plaintiff and his wife Linda also obtained a mortgage with defendant on their marital residence. From the time that plaintiff opened the checking account, Linda had numerous transactions with defendant, most of which took place at the Ewing branch office.
In 1981, plaintiff and his wife separated and entered into a consent agreement whereby plaintiff would pay his wife $150 each week for food and support for herself and their children. *709 At the beginning of each month, plaintiff wrote checks to his wife for the entire month, each check containing the date of a different Friday. Plaintiff testified that he called a representative of defendant, and the representative stated that the defendant's employees would honor these checks:
I informed Mrs. Watson and Mrs. Taylor and Brad Nozick  now, those are three employees who work with the Trenton Savings Fund. Mr. Nozick was one of the people who helped me in the very beginning with my accounts, and I had a very good relationship with Mr. Nozick. Our agreement from day one with this account that I'm talking about was that if at any time there was ever a problem with the account, Brad would not bounce a check on me, he would call me up and then I would make good on that particular check. That was our agreement.
As part of the consent agreement, plaintiff wrote a $150 check to his wife dated January 13, 1984. On Saturday morning, January 14, Linda endorsed the check and presented it for payment at defendant's Robbinsville branch. The teller refused to cash the check even though at the time plaintiff had more than $900 in the account. Joseph Merz, one of defendant's vice presidents, testified how the teller described the events to him:
She told me that the check was presented by Linda, she asked her first do you have an account, Linda said, no, she said, do you have any identification, Linda said no, she said, I can't cash it for you, and Linda said, no problem, I'll go to the Ewing branch and cash it tomorrow.
In his complaint, plaintiff alleged that defendant's branch manager recognized his wife at that time, but nevertheless still refused to cash the check. While defendant admitted this in its answer, Merz testified that the bank's employees did not know Linda at the Robbinsville office.
Plaintiff testified that based on information known to him through discovery, the bank policy was that it did not cash "checks drawn to people if those people who they're drawn to don't also have an account with the bank." According to plaintiff, "[T]he bank does not attempt to identify a payee on a properly drawn check if the payee does not have an existing relationship with the bank or refuses to enter into a business relationship with the bank, even though the payee is known."
Lambert Rockafellar, an employee of defendant bank stated,

*710 The individual cashing the check must have good identification, that's not social security, but good firm identification or an account. The reason for the account is we have the signature on file, that proves to us who the person is that is cashing the check.
After defendant dishonored the January 13 check, plaintiff called Mrs. Watson at the Ewing branch and ascertained that she advised the Robbinsville branch "not to cash the check ... because Linda didn't have an account at the bank." However, Mrs. Watson agreed to permit the check cashing thereafter. She told plaintiff she would so notify the Robbinsville branch.
However, on March 9, 1984, when Ms. Buckley presented another $150 check for payment at the Robbinsville branch, defendant's representative refused to cash it. Defendant did cash the check the following day when Linda presented it for payment at the Ewing branch.
Shortly after defendant's failure to cash the respective checks in a timely manner, plaintiff stated that his wife called his office "and started badgering me, screaming at me, and hollering at me because we were in earnest [divorce] negotiations at that time." He also received the calls described earlier from his parents, his sister, and his best friend noted earlier, all inquiring why he was not making the support payments. In addition, plaintiff testified that his children inquired "why daddy wouldn't give them food money." Plaintiff testified that these telephone calls and his children's inquiries had the following effects on him:
I lost sleep. I was aggravated. I was embarrassed. I developed headaches, and I suffered nervous tension while this was going on. Mostly I was embarrassed about my kids, we're talking ten year old kids, ten down, talking about their dad.

II.
Defendant contends that the jury should not have been permitted to award damages for emotional distress under the facts of this case. Defendant argues that the factors for a compensable emotional distress claim, physical injury or serious psychological sequelae, were absent in this case. In response *711 plaintiff asserts he is entitled to damages for "mental anguish," and that his injury "need not rise to `the higher standard of injury for intentional infliction of emotional distress.'"
The trial judge's charge to the jury included the following:
Now, in this case, and generally with respect to damages for breach of contract, plaintiff who is awarded a verdict for breach of contract is entitled to compensatory damages for such losses as may [fairly] be considered as arising naturally, that is, according to the usual course of events from the defendant's breach of contract. Or, such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of a breach of such contract.
........
Now, one aspect of damages that is before you under the facts of this case has to do with emotional distress that has been testified to by the plaintiff, Mr. Buckley. And I instruct you that in this case there can be, if you're satisfied by the proof, and you find that there was a dishonor of the checks by the  on the part of the defendant, I charge you that as one element of damages, and that you can reach one for intentional infliction of emotional distress.
Now, what is meant by that in the law is that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. Now, liability may exist where the conduct exceeded all bounds usually tolerated by decent society, and where the actions are especially calculated to cause and do cause mental distress of a very serious kind.
So, in this case, if you find that there was a wrongful dishonor of the plaintiff's check, and you find that the plaintiff is entitled to recover damages, you may consider as an element of damage, such intentional infliction of emotional distress as would be  would correspond to that definition that I've given you.
The court continued,
Now, in the event that you do find that there was no intentional infliction of emotional distress in this case, but do find that there was a dishonor, wrongful dishonor of the plaintiff's check on the part of the defendant, you may award nominal damages.
Now, nominal damages can be defined as damages to be awarded in cases of this kind which are unlike compensatory damages and do not attempt to compensate the plaintiff for an actual loss. Rather, they are a trivial amount awarded for the infraction of a legal right where the extent of the loss is not shown or where the right is not one that is dependent upon loss or damage.
The award of nominal damages is made as a judicial declaration that the plaintiff's right has been violated. So, if, under the facts in this case, you find that there had been a breach of contract, or a dishonor of the plaintiff's checks on the part of the defendant, but you further do not find any damages resulting from that breach of contract, you are at liberty to award nominal damages. *712 And in recognition of the fact that the right of the plaintiff was broken, violated by the defendant, but that no loss has been proved as a result thereof.
Pursuant to the charge, the jury could either award damages for intentional infliction of emotional distress or nominal damages. The jury awarded plaintiff $25,000 in damages. After the verdict defendant requested a special interrogatory directed to whether the damages were compensatory or nominal. The court held that it was unnecessary because "it would have to be compensatory." Defendant agreed, and plaintiff did not disagree.[3]
In denying the motion for judgment notwithstanding the verdict of the jury or new trial, the trial judge noted that under N.J.S.A. 12A:4-402, consequential damages can be recovered when a banking institution intentionally dishonors a check. The judge then decided that the jury was entitled to award damages for intentional infliction of emotional distress, even though there was no evidence that plaintiff suffered physical harm.

III.
A bank's liability for wrongful dishonor of a customer's check is defined in § 4-402 of the Uniform Commercial Code (UCC) which was adopted in this State as N.J.S.A. 12A:4-402:
A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case.
The UCC does not indicate the theory or basis for a bank's liability for wrongful dishonor. As explained in the UCC official comment to § 4-402, "The liability of the drawee for dishonor has sometimes been stated as one for breach of *713 contract, sometimes as for negligence or other breach of a tort duty, and sometimes as for defamation. This section does not attempt to specify a theory." See Comment 2 to the Uniform Commercial Code Comment following N.J.S.A. 12A:4-402 (West ed. at 518).[4] The drafters of the UCC did not intend to exclude the possibility of mental distress damages upon a wrongful dishonor by a bank. White and Summers, Handbook of the Law Under the Uniform Commercial Code § 17-4 (2d ed. 1980) at 675. Since § 4-402 is silent "[o]n any restriction of damages when the dishonor is grounded on an action other than mistake ...," Shaw v. Union Bank & Trust Co., 640 P.2d 953, 956 (Okla.Sup.Ct. 1981), it implies that these damages are not precluded by the Code. Thus, out-of-state courts interpreting § 4-402 have concluded that mental suffering is compensable under this section. See, e.g., Twin City Bank v. Isaacs, 283 Ark. 127, 672 S.W.2d 651, 654-655 (1984).
The New Jersey approach to remedies for wrongful dishonor must be considered in light of the New Jersey Study Comment to N.J.S.A. 12A:4-402 which states in part:
Wrongful dishonor is a breach of contract, and the bank is liable accordingly. Meinhart v. Farmers' State Bank, 124 Kan. 333, 259 P. 698 (1927). But the question of damages remains. If a breach is found, the depositor will be entitled to nominal damages at least. Marzetti v. Williams [1 B. & A. 415, 109 Eng.Rep. 842 (K.B. 1830)], supra. In New York, it has been said that the bank is liable only for nominal damages if the dishonor is the result of an innocent mistake. Wildenberger v. Ridgewood Nat. Bank, 230 N.Y. 425, 130 N.E. 600 (1921). In most states, however, consequential damages can be had if pleaded and proved. See, Meinhart v. Farmers' State Bank, supra. [N.J.S.A. 12A:4-402 comment at 517)].[5]
New Jersey courts have thus far declined to permit an award for emotional distress or pain and suffering in breach of contract *714 actions. See Coyle v. Englander's, 199 N.J. Super. 212, 219 (App.Div. 1985). It has been stated that "mental suffering is not normally available in the usual breach of contract situation (absent wanton or reckless misconduct or if the actor knew or should have known that his conduct would cause such results)...." Fiore v. Sears, Roebuck & Co., 144 N.J. Super. 74, 77 (Law Div. 1976). See also Milcarek v. Nationwide Ins. Co., 190 N.J. Super. 358, 370 (App.Div. 1983) (where we refused to establish a new cause of action for emotional distress damages based upon breach of an insurance contract); Lemaldi v. DeTomaso of America, Inc., 156 N.J. Super. 441, 448-449 (Law Div. 1978); 3 Restatement, Contracts, 2d § 353 at 149 (1981 & Supp. 1982); 5 Corbin, Contracts § 1076 at 426-427 (1964). In contrast, emotional distress has been recognized "as an element of damages in actions based on either negligence or an intentional tort." Hume v. Bayer, 178 N.J. Super. 310, 314 (Law Div. 1981). See also Portee v. Jaffee, 84 N.J. 88, 101 (1980); Berman v. Allan, 80 N.J. 421, 433-434 (1979); 1 Restatement Torts 2d § 46 at 71-73 (1965).
We do not have to resolve whether wrongful dishonor gives rise to a tort claim or action for breach of contract because we are satisfied that N.J.S.A. 12A:4-402 expressly provides for a remedy irrespective of theory. See White and Summers, supra, at 675. The Legislature adopted § 4-402 as promulgated in the Uniform Commercial Code without substantive change. The section expressly limits recovery for "actual damages" when the dishonor results from "mistake" but otherwise expressly permits recovery of "consequential damages" proximately caused. As White and Summer explains:
... when wrongful dishonors occur not "through mistake" but willfully, the court may impose damages greater than "actual damages." That the drafters may have intended to perpetuate the per se liability rule in "willful" cases is also supported by the Code history embodied in a pre-Code statute and decisions under it. That statute and those cases make just the distinction we suggest; namely, that a bank that dishonors a check through inadvertence or mistake is not liable for per se defamation of a merchant or trader, and is so liable only if its dishonor is willful or malicious. If the drafters wished to abolish the trader rule altogether, they should have chosen stronger language in the face of this *715 pre-Code statutory and case law history. Certainly the reference to "mistake" in the second sentence of 4-402 invites a court to adopt the relevant pre-Code distinction.
........
Might one argue that "actual damages" excludes recovery for mental distress? We think not. In the first place, the drafters went to great efforts to assure that customers can recover for arrest and prosecution. It is inconsistent to allow recovery for embarrassment and mental distress deriving from arrest and prosecution and to deny similar recovery in other cases. Moreover, cases under the predecessor to 4-402, the American Banking Association Statute, held that "actual damages" includes damages for mental distress. Thus we believe ... that the Code drafters intended to allow recovery for mental distress and other intangible injury. [White and Summers, supra, at 670, 675 (footnotes omitted)].
In this case the judge's instructions failed to delineate the distinction between mistake and an intentional breach or wilful, wanton or reckless misconduct. Moreover, the judge neglected to adequately address the subject of proximate cause. The jury may well have determined that there was an intentional breach or wilful misconduct but that plaintiff's emotional distress was not proximately caused by, or the "natural and probable consequences" of, the bank's conduct, as opposed to the result of intervention of independent factors including the unforseeable conduct and overreaction of Linda Buckley following the dishonor. Cf. Menth v. Breeze Corp., 4 N.J. 428, 441-442 (1950); Thompson v. Victor's Liquor Store, Inc., 216 N.J. Super. 202, 206-207 (App.Div. 1987). See also Raymer v. Bay State National Bank, 384 Mass. 310, 424 N.E.2d 515, 520 (1981); N.J.S.A. 12A 4-402, comment 5 at 518. As a result, the matter must be remanded for a new trial and for a determination of damages based on appropriate instructions.
We preclude an award of punitive damages, however. Punitive damages are not generally recoverable for breach of contract, Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72-73 (1980); Ellmex Const. Co. v. Republic Ins. Co., 202 N.J. Super. 195, 207 (App.Div. 1985), at least when the breach of contract does not also constitute a tort for which punitive damages are recoverable. See Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J. Super. 437, 447-453 (App.Div. 1976), *716 certif. den. 71 N.J. 503 (1976); 5 Corbin, Contracts § 1077 at 438-439 (1964); 3 Restatement, Contracts, 2d § 355 at 154-155 (1981 & 1982 Supp.); cf. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49 (1984). We conclude that that principle is applicable here irrespective of the label attached to plaintiff's claim. In N.J.S.A. 12A:4-402 the Legislature has enlarged the traditional remedies for breach of contract and has expressly provided for consequential but not punitive damages. Hence, the trial court properly dismissed the claim for punitive damages.
In light of our conclusion that the matter must be retried as to damages, we do not deem it necessary to consider any other issue raised on the appeal or on the cross-appeal.[6]
Reversed and remanded for a new trial.
NOTES
[1] For purposes of this appeal defendant does not contest that there was sufficient evidence to support a finding that it intentionally dishonored plaintiff's checks. In light of our determination that the case must be retried, we deem it unnecessary to consider the contention of amicus that there was no "dishonor." The question was presented to the jury as an issue of fact, and we leave the subject for further development at the retrial. See N.J.S.A. 12A:3-501 et seq.
[2] At one point the court indicated that it was dismissing the third count, but in their respective briefs the parties appear to agree that the court was referring either to the fourth claim (invasion of privacy) or to the claim for punitive damages embodied in the third count. However, all claims included a prayer for punitive damages.
[3] In light of the position of the parties we will proceed on the same assumption and will not further consider the treatment of this subject.
[4] UCC comment 3 also explains that where dishonor is "by mistake damages recoverable are limited to those actually proved."
[5] The commentary also noted that different principles apply to "traders" limiting recovery to "actual damages" particularly after adoption of a statute drafted by the American Bankers Association, N.J.S.A. 17:9A-228. See also White and Summers, supra, at 667-677.
[6] We see no basis for reversing the dismissal of the fraud count.