**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2236-20

MIGUEL VERA,

     Plaintiff-Appellant,

v.

STATE FARM INDEMNITY
COMPANY,

     Defendant-Respondent.

_____

Submitted March 9, 2022 – Decided June 16, 2022

Before Judges Gilson and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0054-18.

Forman, Cardonsky & Tsinman, LLC, attorneys for appellant (Samuel Tsinman, on the brief).

Soriano, Henkel, Biehl & Matthews, attorneys for respondent (Thomas W. Matthews, of counsel and on the brief).

PER CURIAM

Plaintiff Miguel Vera was injured in an automobile accident. He sued his insurer, State Farm Indemnity Company (State Farm or defendant), alleging that State Farm breached its policy by delaying approval of a medical test and surgery that caused his injuries to be more serious and permanent. Plaintiff appeals from an order granting summary judgment to State Farm and dismissing his complaint with prejudice. We reverse and remand for further proceedings. The record does not adequately explain the circumstances surrounding the alleged delay in plaintiff's treatment and State Farm was not entitled to summary judgment on the current record.

I.

We take the facts from the summary-judgment record, viewing them in the light most favorable to plaintiff. Grande v. Saint Claire's Health Sys., 230 N.J. 1, 23-24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). On September 10, 2016, plaintiff sustained injuries to his right shoulder when the car he was driving was in an automobile accident. Plaintiff's car was insured by State Farm, and his policy had personal injury protection (PIP).

On September 16, 2016, plaintiff was seen by Dr. Gregory Gallick, an orthopedic surgeon. Dr. Gallick recommended that plaintiff undergo magnetic resonance imaging (MRI) of his right shoulder to assess the injuries. Dr. Gallick

requested State Farm to authorize the MRI, but initially State Farm denied that authorization. Thereafter, State Farm authorized the MRI, and the test was conducted on November 19, 2016.

On December 9, 2016, plaintiff met with Dr. Gallick, who informed him that the MRI showed plaintiff had significant injuries to his right shoulder. Dr. Gallick told plaintiff that he could try additional physical therapy, but he needed surgery. Approximately a month later, on January 16, 2017, plaintiff met with Dr. Gallick, who again recommended surgery.

On January 20, 2017, plaintiff was examined by a doctor selected by State Farm to conduct a separate medical evaluation. State Farm then authorized the surgery, which was performed on February 23, 2017.

Dr. Gallick, who performed the surgery, found a complete tear of the bicep tendon of plaintiff's right shoulder. Dr. Gallick recounted the treatment administered to plaintiff and stated his opinions in a letter dated June 9, 2017 (the Dr. Gallick letter). In that letter, Dr. Gallick stated that the delay in approving the MRI and surgery prevented him from repairing the bicep tendon and left plaintiff with a significant "permanent injury to his right shoulder and permanent damage to the bicep tendon." Dr. Gallick opined:

> The delay in authorization from [State Farm] has clearly caused even a further worsening of [plaintiff's]

status. Clearly, [State Farm] dragging [its] feet with regards to authorization for the MRI and then subsequent authorization for the surgery has left [plaintiff] with a more significant injury to his right shoulder than would have been present if [State Farm] had given appropriate authorization at the appropriate time.

In 2018, plaintiff sued State Farm. In his amended complaint, plaintiff alleged that State Farm "arbitrarily and capriciously breached its contractual obligations" by delaying the approval of his MRI and surgery. He asserted that the delay caused the injury to his right shoulder to be permanent and more serious than would have been the case if the testing and surgery had been approved "in a timely manner." As damages, plaintiff sought compensatory and punitive damages, as well as attorneys' fees and costs.[1]

In 2019, both parties cross-moved for summary judgment. On June 26, 2019, the trial court denied those motions. In 2020, after discovery was closed, State Farm again moved for summary judgment. On March 1, 2021, the trial

---

[1] Plaintiff had also sought reimbursement of a $500 deductible. In his amended complaint, he alleged that State Farm was responsible for recovering that deductible in a subrogation action. State Farm represents that it refunded the $500 and plaintiff does not dispute that representation. Moreover, plaintiff has made no argument concerning the deductible on this appeal and we consider that issue abandoned. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011).

A-2236-20

court granted summary judgment to State Farm and entered an order dismissing plaintiff's complaint with prejudice.

In an accompanying written opinion, the trial court reasoned that plaintiff's claims were claims for the wrongful denial of PIP benefits and that N.J.S.A. 39:6A-5(h) limited the remedies on a successful claim for a denial of, or delay in approval of, benefits to recovery of interest and attorneys' fees. The trial court then reasoned that plaintiff was not seeking interest or attorneys' fees as provided for in the statute and that his claims for compensatory and punitive damages were statutorily barred.

## II.

On appeal, plaintiff argues that his claims do not involve a denial of coverage; rather, his claims are for a delay in authorizing testing and treatment and, therefore, his claims are not barred by the statute governing PIP benefits.

We review a grant of summary judgment de novo, using the same standard that governed the trial court's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat, 217 N.J. at 38). Summary judgment will be granted when "the evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact," and that "the moving party is

entitled to summary judgment as a matter of law." Grande, 230 N.J. at 23-24 (2017) (quoting Bhagat, 217 N.J. at 38).

State Farm argues that the No-Fault Act, N.J.S.A. 39:6A-1 to -35, set forth the exclusive remedy available if an insurer fails to issue payments in a timely manner. See N.J.S.A. 39:6A-5(g). The No-Fault Act's statutory scheme provides an exclusive remedy for some, but not all, automobile insurance claims. See Taddei v. State Farm Indem. Co., 401 N.J. Super. 449, 463 (App. Div. 2008) (holding that "[n]o . . . statutory scheme provides an exclusive remedy" in context of uninsured or underinsured motorist claims). The text of N.J.S.A. 39:6A-5 addresses the payment of PIP benefits but not authorization or precertification. For example, the statute explains that payments from an insurer are overdue after sixty days following receipt of the notice of the claim, assuming the insurer does not deny the claim or explain the need for additional time to investigate the claim. N.J.S.A. 39:6A-5(g). In addition, the statute references situations where a treating health care provider is required to give written notice to an insurer "following the commencement of treatment." N.J.S.A. 39:6A-5(a). Failure to give written notice within twenty-one days of the commencement of treatment may allow the insurer to deny payment of the claim. N.J.S.A. 39:6A-5(c). Health care providers have an incentive to comply

with this notice requirement because they are prohibited from seeking payment directly from the insured. Ibid. In short, the text of the statute relates to payment of benefits after treatment has commenced and notice to the insurer. By its plain language, N.J.S.A. 39:6A-5 does not expressly preclude plaintiff's claim.

Because the No-Fault statute does not clearly preclude plaintiff's claim, we need to examine whether plaintiff has asserted a viable claim. Plaintiff has asserted that State Farm breached its obligations under his insurance policy. Under New Jersey law, the obligation to act in good faith is "an implied term of every contract" including an insurance policy. Pickett v. Lloyd's, 131 N.J. 457, 467 (1993). Our Supreme Court has recognized an insurance company's duty of good faith and fair dealing in the processing of insurance claims:

> In the case of processing delay, bad faith is established by showing that no valid reasons existed to delay processing the claim and the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay . . . . [L]iability may be imposed for consequential economic losses that are fairly within the contemplation of the insurance company.
>
> [Ross v. Lowitz, 222 N.J. 494, 513-14 (2015) (alterations in original) (quoting Pickett, 131 N.J. at 481).]

"The good faith obligations of an insurer to its insured run deeper than those in a typical commercial contract." Badiali v. New Jersey Mfrs. Ins. Grp.,

220 N.J. 544, 554 (2015). "[A]n insurer's breach of good faith may be found upon a showing that it has breached its fiduciary obligations . . . ." Ibid. (reaffirming Pickett). Accordingly, the duty of good faith can apply to matters such as timely authorization and precertification decisions.

The scope of an insurer's duty "is not to be equated with simple negligence." Pickett, 131 N.J. at 481. "If there is a valid question of coverage, i.e., the claim is 'fairly debatable,' the insurer bears no liability for bad faith." Wacker-Ciocco v. Gov't Emps. Ins. Co., 439 N.J. Super. 603, 611 (App. Div. 2015) (citing Pickett, 131 N.J. at 473-74). "This standard continues to apply to bad faith claims." Ibid. (citing Badiali, 220 N.J. at 544). An insurer's decision can be erroneous without also being in bad faith. Id. at 613 (citing Universal-Rundle Corp. v. Com. Union Ins. Co., 319 N.J. Super. 223, 249 (App. Div. 1999)).

Because a claim of bad faith in processing sounds more in contract than in tort, "the familiar principles of contract law will suffice to measure the damages." Pickett, 131 N.J. at 474. "Under contract law, a party who breaches a contract is liable for all of the natural and probable consequences of the breach of that contract." Ibid. (quoting Donovan v. Bachstadt, 91 N.J. 434, 444-45 (1982)). As a result, punitive damages are available to the insured in a bad-faith

case only in "egregious circumstances." Id. at 476. Sustaining a claim for punitive damages requires the insured to "show something other than a breach of the good-faith obligation" that may itself be an independent cause of action. Id. at 475-76; see also Milcarek v. Nationwide Ins. Co., 190 N.J. Super. 358, 368 (App. Div. 1983) (holding that punitive damages are not available for a delay of paying PIP medical benefits).

Consequently, New Jersey law permits claims for damage caused by delayed authorization where a plaintiff can prove a breach of contract. "To establish a breach of contract claim, plaintiffs must prove: the parties entered into a contract, containing certain terms; plaintiffs performed what was required under the contract; defendant did not fulfill its obligation under the contract; and defendant's breach caused a loss to plaintiffs." Pollack v. Quick Quality Restaurants, Inc., 452 N.J. Super. 174, 188 (App. Div. 2017).

To state a claim for damages from the delay in authorizing testing and treatment, plaintiff will need to show: (1) State Farm had a good-faith obligation in its policy to authorize the MRI and surgery; (2) State Farm unreasonably delayed that authorization, and those decisions were not 'fairly debatable,' thus failing to fulfill its contractual obligation; (3) and that the unreasonable delay caused him damages. Plaintiff has not established those facts in the record

before us. For example, he has not provided us with a copy of his policy. Nor has he shown that Dr. Gallick needed preauthorization to conduct the MRI. He has also not shown that State Farm acted unreasonably in having its own doctor examine plaintiff before plaintiff had surgery.

Although plaintiff has not established the elements of a bad-faith claim, the record also does not show that plaintiff cannot prove the claim. Consequently, State Farm was not entitled to summary judgment. Instead, we remand the case for further proceedings. In remanding, we take no position on whether plaintiff can prove a claim or if plaintiff's alleged damages are consequential economic losses that are fairly within the contemplation of the insurance company. Those issues will need to be examined on remand.

The March 1, 2021 order is vacated and the case is remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2236-20