HECTOR FIGUEROA, PLAINTIFF, v. ALLSTATE INSURANCE COMPANY, DEFENDANT.

Superior Court of New Jersey
Law Division Special Civil Part
Bergen County

Decided December 13, 1985.

*Mr. William Sellinger*, attorney, for plaintiff.

*Messrs. Dwyer, Connell & Lisbona*, attorneys, for defendant.

deCORDOVA, J.S.C.

When does "municipality" mean municipality? We are asked this question by way of cross motions for partial summary judgment in an action for Personal Injury Protection (PIP) benefits by plaintiff Hector Figueroa against defendant Allstate Insurance Company. There is no reported case on this subject.[1] Both sides agree on the facts; therefore, the court will declare the rights of the parties by interpreting the meaning of *N.J.S.A.* 39:6A–13d, a section under the Automobile Reparation Reform Act. *See* Uniform Declaratory Judgments Act, *N.J.S.A.* 2A:16–50 *et seq.*

On April 8, 1984 plaintiff was injured in an accident involving a private passenger motor vehicle. Despite repeated demands for reparation under the terms of his insurance policy, plaintiff alleges that defendant refused to provide proper payment. Defendant admits that payment has been withheld but formally responds that it has fully complied with the provisions of *N.J.S.A.* 39:6A:1 *et seq.* and therefore is justified in its action. As a defense, defendant contends that it is relieved of liability because plaintiff failed to comply with *N.J.S.A.* 39:6A–1 *et seq.*, by refusing to undergo certain neurological and orthopedic examinations it requested on April 16, 1984.

In support of his refusal to cooperate, plaintiff cites *N.J.S.A.* 39:6A–13d, which says, "[s]uch [physical] examination shall be conducted within the municipality of residence of the injured person." Plaintiff, a resident of Paterson, was asked to be examined by Doctors Frank Riccioli and Chris Mattheou, specialists who practice in Clifton and Passaic, respectively. On October 21, 1985 plaintiff moved to strike this latter defense concerning plaintiff's refusal to appear.

*N.J.S.A.* 39:6A–13d governs discovery of facts as to personal injury protection coverage and states in full:

---

[1]Nicholas G. Mandak, J.S.C., wrote an illustrative, unpublished opinion on June 15, 1981 on this issue, parts of which are included in this decision. (*Weiss v. Motor Club of America*, Docket #80–7793.)

> Whenever the mental or physical condition of an injured person covered by personal injury protection is material to any claim that has been or may be made for past or future personal injury protection benefits, such person shall, upon request of an insurer or the Unsatisfied Claim and Judgment Fund submit to mental or physical examination by a physician or physicians. The cost of any examinations requested by an insurer or the Unsatisfied Claim and Judgment Fund shall be borne entirely by whomever makes such request. *Such examination shall be conducted within the municipality of residence of the injured person.* If there is no qualified physician to conduct the examination within the municipality of residence of the injured person, then such examination shall be conducted in an area of the closest proximity to the injured person's residence. Personal protection insurers are authorized to include reasonable provisions in personal injury protection coverage policies for mental and physical injury protection benefits. [Emphasis supplied.]

In his motion, plaintiff relies on the language of the statute and argues that absent the lack of qualified physicians in Paterson, an issue not before this court but addressed specifically in *N.J.S.A.* 6A–13d, examinations must be held in the *municipality* where he resides. In addition, plaintiff offers the names of physician specialists located in Paterson.

Allstate Insurance reasons that *N.J.S.A.* 13d gives an insurance carrier the right to obtain an independent examination of its insured when there is a claim for payment of benefits. Although the doctors' offices were not located in the municipality where plaintiff resides, defendant argues that there is no basis for plaintiff's refusal to submit to the examinations, especially since all but one of plaintiff's treating physicians are located outside of Paterson. Plaintiff regularly and frequently visited a chiropractor in Ridgewood, New Jersey, a location farther from Paterson than either Clifton or Passaic. This fact is deemed irrelevant by the court; the statute in no way regulates plaintiff's choice of doctors.

Defendant concludes that its right to request a physical examination obligates the claimant to cooperate if the locations are contiguous and attendance is not *inconvenient.* Inconvenience is not the test.

In order to find defendant's argument persuasive, we must interpret "within the municipality" to mean not only a geo-

graphic designation but also a permissive authority for an insurer to require an insured to attend a medical examination at a location contiguous and convenient to the insured. This we cannot do.

Under the canons of statutory construction, a court's duty in construing the language of a statute is to determine the intent of the Legislature, *AMN, Inc. v. South Brunswick Leveling Bd.*, 93 *N.J.* 518, 525 (1983), and to enforce the legislative will as written. *Dacunzo v. Edgye*, 19 *N.J.* 443, 451 (1955), and *Hoffman v. Hoch*, 8 *N.J.* 397 (1952) cited in *Salb v. Lemoine Ave. Assoc.*, 178 *N.J.Super.* 36, 40 (App.Div.1981). In the absence of an explicit indication of a special meaning, words will be given their ordinary and well understood meaning. *Levin v. Parsippany-Troy Hills Tp.*, 82 *N.J.* 174, 182 (1980); *Safeway Trails, Inc. v. Furman*, 41 *N.J.* 467, 478, *cert. den.*, 379 *U.S.* 14, 85 *S.Ct.* 144, 13 *L.Ed.*2d 84 (1964), *cited in In re Barnert Memorial Hospital Rates*, 92 *N.J.* 31, 40 (1983).

"Municipality," as used in Title 39, is not defined. However, "municipality" is defined elsewhere in the New Jersey statutes under Title 40 and "means and includes 'city,' 'township,' 'village,' 'borough,' and any municipality governed by a board of commissioners...." *N.J.S.A.* 40:42–1. This definition denotes a specific legal entity that can be identified, *inter alia*, by geographic boundaries. This legislative pronouncement amply verbalizes an ordinary and well understood meaning of the word "municipality." We must turn, however, to the legislative history of the no-fault insurance act to determine whether or not the Legislature intended to contravene this definition.

In December 1971, the legislatively-created Automobile Insurance Study Commission released its report to the Governor and the Legislature. A primary objective was "the prompt and efficient provision of benefits for all accident injury victims." Automobile Ins. Study Comm'n., State of New Jersey, *Reparation Reform for New Jersey Motorists* 7 (Dec.1971), *see also, Gambino v. Royal Glove Ins.*, 86 *N.J.* 100, 106 (1981).

The Commission observed that within the then existing fault system claim frequency was considerably lower than loss frequency. A fundamental principle of a no-fault system is that claim frequency equates with loss frequency. *Reparation Reform* at 17. In adopting no-fault insurance, the Legislature was supporting a system that would maximize the flow of individual losses into payable claims. *Id.* at 24.

While the legislative history does not reflect specific reference to *N.J.S.A.* 16A–13d, it is fundamental that the general intention of the act controls the interpretation of its parts. *Hackensack Water Co. v. Ruta,* 3 *N.J.* 139, 147 (1949), cited in *Plainfield Bd. of Ed. v. Plainfield Ed. Ass'n,* 144 *N.J.Super.* 521, 524 (App.Div.1976). As a general proposition, it appears that the Legislature intended to accommodate rather than to inconvenience the injured person. While the person seeking recovery under the act is to submit to an examination, not only is the insurance carrier to bear the costs of any examination, but it is to have the examination conducted within a location bearing some relation to the injured person's residence.

The purpose for specific wording with regard to the location of the examination appears to have been the Legislature's solution to obtaining medical reports by neutral physicians. Unlike the statutes enacted in other jurisdictions, the New Jersey statute is very specific. For example, Pennsylvania's statute, 40 *P.S.* § 1009.101 *et seq.,* permits a court of competent jurisdiction to order the injured person to submit to a mental or physical examination without any limit or specificity as to the location. The Massachusetts statute, *M.G.L.A.* c. 90, § 34, gives the insurer more control by permitting an examination by a doctor of the insurer's choice as often as may be reasonably required. While New Jersey's no-fault act basically follows the Massachusetts plan, New Jersey's plan is significantly different in two respects: The New Jersey statute specifies the location of the examination and does not specifically provide for more than one examination as does the Massachusetts statute. It is

clear that New Jersey did not follow the Massachusett's plan on this particular issue.

Before New Jersey adopted a no-fault act, Massachusetts and Florida had no-fault acts. While New Jersey adopted almost entirely the substance of the Massachusetts act, the New Jersey section relevant to discovery and dealing with mental and physical examinations is different from the Massachusetts act, yet identical to the Florida act. *F.S.A.* § 627.730 *et seq.*

New Jersey's statute is even more specific than that of North Dakota, *N.D.C.C.* 26–41 *et seq.*, which permits the examination designated by the insurer at a "reasonably convenient location." The New Jersey Legislature described and mandated through the use of the words *"shall* be conducted" the exact location of the examination. [Emphasis supplied.] Normally, "shall" is differentiated from "may" and connotes mandatory legislative intent. *Murnick v. Asbury Park,* 187 *N.J.Super.* 455, 460 (App.Div.1982), *see also, Harvey v. Essex County,* 30 *N.J.* 381, 391 (1959).

Another factor deserves consideration. This is the necessity of producing fair and impartial medical reports resulting from competent, professional and neutral medical examinations. It is difficult to conceive that it was not in the Legislature's contemplation that not only would the present statutory language provide convenience to the injured plaintiff, but also that it would tend to avoid the previous unsatisfactory but common-place practice of having such examinations performed by physicians who maintain a substantial financial relationship with insurance carriers. By requiring the examination to be conducted within the municipality of residence, the statute has the welcomed effect of substantially broadening the number of physicians retained by carriers to conduct such examinations. Put another way, the demand for discovery should not be for an examination by "our" doctor but rather by "a" doctor.

In resolving this question of statutory construction, this court must effectuate legislative intent in light of the language used

and the objectives sought to be achieved. *State v. Maguire*, 84 *N.J.* 508, 514 (1980). There being, however, no ambiguity either facially or legislatively, we find in keeping with common parlance, that "municipality" is a geographic designation and means the hometown where one resides.

Thus, judgment is entered for plaintiff striking the defenses. The matter shall proceed to trial.[2] If the Legislature disagrees with this ruling it can modify this section.

---

[2]Subsequent to this ruling the case has been settled on the merits.