PHILIP BENYOLA; LINDA BENYOLA, INDIVIDUALLY AND AS THE GUARDIAN AD LITEM—ON BEHALF OF THE INFANT PLAINTIFFS, PHILIP BENYOLA, JR. AND CHRISTINA BENYOLA, PLAINTIFFS–APPELLANTS, v. ALLSTATE INSURANCE COMPANY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 11, 1989—Decided January 3, 1990.

Before Judges PETRELLA, O'BRIEN and STERN.

*Richard H. Wildstein* argued the cause for appellant (*Goldstein, Ballen, O'Rourke & Wildstein,* attorneys, *Vincent M. Russo,* on the brief).

*Eugene M. Purcell* argued the cause for respondent (*Purcell, Ries, Shannon & Mulcahy,* attorneys, *Thomas E. Ryan,* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

This appeal requires us to interpret provisions of *N.J.S.A.* 39:6A–13(d), a section of the New Jersey Automobile Reparation Reform Act, *N.J.S.A.* 39:6A–1 *et seq.* Specifically, we must decide whether plaintiffs, who sought Personal Injury Protection (PIP) benefits under plaintiff Philip Benyola's policy of insurance with defendant, were justified in refusing to attend physical examinations as directed by defendant, Allstate Insurance Company.

Plaintiffs were injured in an automobile accident and filed claims for PIP from defendant. By letter dated September 5, 1985, defendant's claim representative requested that plaintiffs, residents of Parlin, Middlesex County, attend physical examinations at the office of Dr. Steven Frank, an orthopedist, in Spotswood, Middlesex County. In response, by letter dated October 10, 1985, plaintiffs' attorney reminded defendant's claim representative that plaintiffs were represented by counsel, objected to correspondence sent directly to plaintiffs, and requested information concerning "the doctor's field of medicine" "[s]o that I can properly advise my clients whether or not the medical appointment which you have requested with Dr. Frank is appropriate." In a letter dated October 16, 1985, the claim representative advised counsel that her letter of September 5, 1985 was dispatched four days before the date on the letter of representation and that if plaintiffs "do not attend the second examination on October 23, 1985 all medical benefits will immediately be suspended for failure to comply with their

insurance contract." By response, dated October 23, 1985, counsel again objected to direct communication with his clients and stated:

> With regard to your request for physical examination by Dr. Steven Frank of Spotswood, New Jersey, I would point out that same is not in conformity with New Jersey Statute Title 6A et seq.
>
> Pursuant to the terms of that Statute, your PIP examination must be had with a physician practicing within the municipality of your assured.
>
> Accordingly, you have no right to suspend benefits to my clients and your insured and any such action, or continued threatening action may subject you to litigation—not only for the payment of the medical bills, but also for counsel fees, costs and/or punitive damages.
>
> On behalf of my client, I once again want to represent to you that we are ready, willing and able to render full cooperation to your company with regard to all appropriate requests which are in conformity to law.

By memorandum dated October 25, 1985, the carrier responded. The claims representative enclosed a copy of *N.J.S.A.* 39:6A–13 and stated:

> the examination can be conducted in the area of closest proximity to the insured's residence. Since we have examining physicians in Metuchen, Spotswood, Bound Brook and Plainfield, the Spotswood location is the closest proximity.[1]

By letter dated November 15, 1985 counsel again wrote the claims representative. He contended:

> ... if there is no qualified physician in the municipality where your assured resides, then the examination shall be conducted in an area of the closest proximity. You have not yet represented that there is no qualified physician located in Parlin, and a review of the map suggests that there are several municipalities more proximal to your assured's residence.
>
> It is is our position that the language used in the statute was intended not only to serve the convenience of the assured, but also to prevent the insurance companies from using their usual "stable" of physicians as they do for liability exams.

It is apparent that plaintiffs' position was that defendant's interpretation of the statute, permitting it to require an examination by its doctor in closest proximity to plaintiffs' residence, was ineffectual. In any event, plaintiffs did not appear for the

---

[1]There may have been additional communications because counsel's letter of November 15, 1985 refers to a case, apparently referred to by the carrier.

physical examination as noticed by defendant, PIP benefits were terminated, and this action was commenced.

The parties filed cross motions for summary judgment which were returnable on February 17, 1989. Plaintiff sought PIP benefits, interest on overdue payments and counsel fees for bringing the action. After arguments, the motion judge denied plaintiffs' application, but granted the defendant's motion. He dismissed the complaint, concluding:

> The statute has to be read with some common sense in application. The determination of qualifications of a physician are inherenly [sic] a right of a party defending in an action. To compel them to select an expert witness not of their choosing, not of their satisfaction, would be entirely improper and unconstitutional intrusion on a right to adequate competent counsel in preparation for trial.
>
> I read N.J.S.A. 39:6A–13D to mean reasonable, reasonably accessible to the plaintiff. Certainly where the travel distance in time is the same as his own chiropractor as to see this physician, to read the statute as [plaintiffs suggest] would be entirely inappropriate.

The motion judge determined that plaintiffs were travelling to a chiropractor in New Brunswick, a greater distance from their residence than Spotswood, and that defendant had the inherent right to choose its own examining physician closest to plaintiffs' residence. Accordingly, the court ruled in favor of defendant. Plaintiffs appeal from the judge's conforming order of February 21, 1989 granting summary judgment "in favor of the defendant, Allstate Insurance Company, dismissing with prejudice any and all claims of plaintiff filed against Allstate Insurance Company." [2] Although we agree with much stated by the motion judge, we reverse the dismissal.

*N.J.S.A.* 39:6A–13(d) provides:

---

[2]The record also contains a motion, dated March 16, 1987 and returnable on April 10, 1987, seeking a dismissal of the complaint on the grounds that plaintiffs refused to submit to physical examinations on September 23, 1985 and March 2, 1987 at the office of Dr. Frank, as directed by defendant. The accompanying certification indicates that defendant had obtained an order directing a physical examination on March 2, 1987, but that the order was not signed until March 3, 1987, or received by defendant until March 9, 1987. The certification accompanying the motion also indicates that plaintiffs' counsel

Whenever the mental or physical condition of an injured person covered by personal injury protection is material to any claim that has been or may be made for past or future personal injury protection benefits, such person shall, upon request of an insurer or the Unsatisfied Claim and Judgment Fund submit to mental or physical examination by a physician or physicians. The cost of any examinations requested by an insurer or the Unsatisfied Claim and Judgment Fund shall be borne entirely by whomever makes such request. *Such examination shall be conducted within the municipality of residence of the injured person. If there is no qualified physician to conduct the examination within the municipality of residence of the injured person, then such examination shall be conducted in an area of the closest proximity to the injured person's residence.* Personal protection insurers are authorized to include reasonable provisions in personal injury protection coverage policies for mental and physical examinations of those claiming personal injury protection coverage benefits. (Emphasis added).

In *Gambino v. Royal Globe Ins. Co.*, 86 *N.J.* 100, 105–108 (1981), our Supreme Court reviewed the history and purpose of the no-fault (PIP) statute. The Court noted that the statute was designed to alleviate the problem caused by the failure of many automobile accident victims to receive prompt and adequate reimbursement for their economic losses. The Court also stated that an "important goal of the no-fault reforms that must be considered is the judicial objective." 87 *N.J.* at 107.[3] As Justice Handler noted,

The legislation, in this regard, was designed "to minimize the workload placed upon the courts by enabling losses to pass into claims ... with a minimum of judicial intermediation." [Automobile Insurance Study Commission, State of New Jersey, *Reparation Reform for New Jersey Motorists*, (December 1971)]

---

was not served with a copy until March 13, 1987, but contends that dismissal was appropriate because "plaintiffs and their counsel have always been aware that the issue in dispute has been their failure to submit to medical examinations which is and was the right of Allstate Insurance Company to require of personal injury PIP insureds." The record does not reveal the disposition of this motion, and as counsel at oral argument before us acknowledged that the March 3, 1987 order compelling the physical examinations was not signed or received until after the date for the examinations had passed, we do not consider the impact of that order on this appeal.

[3]*See* Report, Automobile Insurance Study Commission, State of New Jersey, *Reparation Reform for New Jersey Motorists* (December, 1971), discussion "the reparation objective" (at 41–64), "the cost objective" (at 65–92), "the availability objective" (at 93–98) and "the judicial objective" (at 99–103).

at 24. The problem of long delays in obtaining compensation was perceived as the primary flaw in the previous system which encouraged recourse to and reliance upon the judiciary to adjudicate liability based upon the fault of the parties involved. *Id.* at 99–100. The testimony before the Committee was replete with complaints about the hardships incurred by accident victims due to the lengthy passage of time between injury and recovery that far too often occurred under the old system. *Public Hearings, supra.* Vol. 1 at 29, 47, 53–54, 73, 5A, 13A, 30A, 46A, Vol. 2 at 3, 88, 122–123, Vol. 3 at 223, Vol. 4 at 43, 73, 82–83 (April 30, 1971).

In interpreting the statute to give full effect to the legislative intent, then, the statutory language must be read, whenever possible, to promote *prompt* payment to *all* injured persons for *all* of their losses. [86 *N.J.* at 107].

Consistent with that objective, our Supreme Court has also indicated that the act must be liberally construed to accomplish its purpose. *See Amiano v. Ohio Cas. Ins. Co.,* 85 *N.J.* 85, 90 (1981). As stated in *Amiano:*

... the Act itself requires us to construe its provisions liberally in order to effect the legislative purpose to the fullest extent possible. *N.J.S.A.* 39:6A–16. The No–Fault Act is social legislation intended to provide insureds with the prompt payment of medical bills, lost wages and other such expenses without making them await the outcome of protracted litigation. Mandated as a social necessity, PIP coverage should be given the broadest application consistent with the statutory language. [*Ibid.*].

*See also Motor Club of America Ins. Co. v. Phillips,* 66 *N.J.* 277, 293 (1974) (requiring statutory construction with "liberality in effecting the broadest protection of auto accident victims consistent with the language of the pertinent statute.") [4]

*Figueroa v. Allstate Ins. Co.,* 209 *N.J.Super.* 586, 590 (Law Div.1985), considered a related issue under *N.J.S.A.* 39:6A–13(d) and compared the New Jersey statute with similar provisions in other states:

The purpose for specific wording with regard to the location of the examination appears to have been the Legislature's solution to obtaining medical reports by neutral physicians. Unlike the statutes enacted in other jurisdictions, the New Jersey statute is very specific. For example, Pennsylvania's statute, 40 *P.S.* § 1009.101 *et seq.*, permits a court of competent jurisdiction to order the injured person to submit to a mental or physical examination without

---

[4]As to the issue of "stacking" considered by *Phillips, see N.J.S.A.* 17:28–1.1(c); *see also, e.g., Christy v. City of Newark,* 102 *N.J.* 598, 611 (1986); *Mondelli v. State Farm Mut. Auto. Ins. Co.,* 102 *N.J.* 167, 173 (1986).

any limit or specificity as to the location. The Massachusetts statute, *M.G.L.A.* c. 90 § 34, gives the insurer more control by permitting an examination by a doctor of the insurer's choice as often as may be reasonably required. While New Jersey's no-fault act basically follows the v Massachusetts plan, New Jersey's plan is significantly different in two respects: The New Jersey statute specifies the location of the examination and does not specifically provide for more than one examination as does the Massachusetts statute. It is clear that New Jersey did not follow the Massachusett's plan on this particular issue.

Before New Jersey adopted a no-fault act, Massachusetts and Florida had no-fault acts. While New Jersey adopted almost entirely the substance of the Massachusetts act, the New Jersey section relevant to discovery and dealing with mental and physical examinations is different from the Massachusetts act, yet identical to the Florida act. *F.S.A.* § 627.730 *et seq.*

New Jersey's statute is even more specific than that of North Dakota, *N.D.C.C.* 26–41 *et seq.,* which permits the examination designated by the insurer at a "reasonably convenient location." The New Jersey Legislature described and mandated through the use of the words *"shall* be conducted" the exact location of the examination. [Emphasis supplied.] Normally, "shall" is differentiated from "may" and connotes mandatory legislative intent. *Murnick v. Asbury Park,* 187 *N.J. Super.* 455, 460 (App.Div.1982), *see also, Harvey v. Essex County,* 30 *N.J.* 381, 391 (1959). [209 *N.J. Super.* at 590–591].

## As Judge DeCordova noted in *Figueroa:*

Another factor deserves consideration. This is the necessity of producing fair and impartial medical reports resulting from competent, professional and neutral medical examinations. It is difficult to conceive that it was not in the Legislature's contemplation that not only would the present statutory language provide convenience to the injured plaintiff, but also that it would tend to avoid the previous unsatisfactory but commonplace practice of having such examinations performed by physicians who maintain a substantial financial relationship with insurance carriers. By requiring the examination to be conducted within the municipality of residence, the statute has the welcomed effect of substantially broadening the number of physicians retained by carriers to conduct such examinations. Put another way, the demand for discovery should not be for an examination by "our" doctor but rather by "a" doctor. [209 *N.J. Super.* at 591].

If the insured contends that the carrier did not select a qualified physician in the municipality of the insured's residence we believe that the insureds have an initial burden of coming forward with some evidence that there is a "qualified physician" in that municipality. As plaintiffs contend, the statute specifically provides that the "examination shall be conducted within the municipality of residence of the injured person." The fact that the carrier does not generally employ a physician to conduct an examination in that municipality does not control.

Of course, if there is "no qualified physician to conduct the examination" within that municipality, the carrier can select a "qualified physician" to conduct the examination "in an area of the closest proximity to the injured person's residence." The statute is concerned with the convenience of the insured, requiring him to travel at the insurer's request (as opposed to his own election for treatment) only outside of the municipality of his residence if no qualified physician can examine in that municipality, and only to an area in closest proximity to the residence. *See Figueroa, supra,* 209 *N.J. Super.* at 588. That does not mean to suggest, however, that there will always be a "qualified physician" in the municipality or in close proximity thereto. Which physician may be "qualified" may depend upon the totality of circumstances based on the claims submitted. Further, because the examination is being conducted to assure the carrier that the claims are legitimate and the PIP benefits are payable, the carrier should generally decide which physician it deems "qualified".

■ The issue, as we see it, relates to which party has the burden with respect to the selection of the physician. We must consider that issue in the context of our case law recognizing the need not to inconvenience insureds and to minimize court proceedings.

*N.J.S.A.* 39:6A–13(g) provides:

g. In the event of any dispute regarding an insurer's or the Unsatisfied Claim and Judgment Fund's or an injured person's right as to the discovery of facts about the injured person's earnings or about his history, condition, treatment, dates and costs of such treatment, or the submission of such injured person to a mental or physical examination, *the insurer,* Unsatisfied Claim and Judgment Fund *or the injured person* may petition a court of competent jurisdiction for an order resolving the dispute and protecting the rights of all parties. The order may be entered on motion for good cause shown giving notice to all persons having an interest therein. Such court may protect against annoyance, embarrassment or oppression and may as justice requires, enter an order compelling or refusing discovery, or specifying conditions of such discovery; the court may further order the payment of costs and expenses of the proceeding, as justice requires.

The statute permits either party to obtain an order, and if the position of the other is not taken in good faith, costs and expenses may be awarded. However, the issue must "get off dead center" in a timely fashion. Since the insured seeks the PIP benefits, and given the preference in favor of a party selecting its own expert, the insured should have the burden of filing a summary proceeding under *N.J.S.A.* 39:6A–13(g) if he challenges the discovery notice and if the carrier does not commence the action. *See also R.* 4:67.

All the injured person need do is make a showing pursuant to *N.J.S.A.* 39:6A–13(g) that: (a) claimants were noticed to appear for an examination in a municipality outside their residence, and (b) that there is a "qualified physician" competent to conduct the examination in the municipality of their residence or in closer proximity to their residence than the physician selected by the carrier. The claimant should have the initial burden of going forward in that regard, and in response the carrier will have the burden of persuasion with respect to the absence of a qualified physician, in closer proximity to the insured's residence, as compared to the *situs* of examination as selected by the carrier. *See Evid.R.* 1(4), (5). *Cf. Griggs v. Bertram,* 88 *N.J.* 347, 365–368 (1982) (denial of coverage); *Fitzgerald v. Wright,* 155 *N.J.Super.* 494 (App.Div.1978).[5] *See also Van Houten v. N.J. Manufacturers Ins. Co.,* 159 *N.J.Super.* 208, 217 (Cty.D.Ct.1978), (". . . it is clear that the burden of investigating personal injury claims rests primarily with the insurance carrier and not with the insured. *N.J.S.A.* 39:6A–13 *et seq.*"), *aff'd,* 170 *N.J.Super.* 415 (App.Div.1979).

As defendant points out, this plaintiff did nothing of substance to challenge the request for physical examination except file a complaint almost eight months after the examination was initially scheduled, seeking damages. However, because the

[5]Our opinion, of course, does not preclude an examination by a physician selected by the carrier to travel to the insured's residence or to be sent to the municipality of the insured's residence for that purpose.

purpose of the No–Fault Act is to promote the payment of PIP benefits without unnecessary litigation, traditional litigation should have been avoided in this case. The issue of whether plaintiffs were properly requested to attend a physical examination at Dr. Frank's office should have been disposed of by summary proceeding under *N.J.S.A.* 39:6A–13(g) and *R.* 4:67.

In their cross motion for summary judgment plaintiffs claimed their "failure to be examined at the location outside their municipality of residence, as requested by defendant, Allstate Insurance Company, in no form whatsoever precluded them from entitlement to PIP benefits." The certification continued that "... defense counsel's arguments are highly unpersuasive in view of the clear meaning of *N.J.S.A.* 39:6A–13(d) and the underlying history of the enactment of the aforesaid statute." Further they claimed that defendant's "request for examination failed to comply with the clear imports of *N.J.S.A.* 39:6A–13(d) and therefore, should be deemed as though no request was made" under that statute. However, at no point in the proceedings did plaintiffs present a certification to the effect that there was a qualified physician in Parlin or in closer proximity to the municipality of plaintiffs' residence than Spotswood.

█ Accordingly, plaintiffs did not come forward with the proofs necessary to sustain a challenge.[6]

Nevertheless, the dispute in this case was genuine and meritorious. Accordingly, rather than affirming the dismissal of

---

[6]The fact that plaintiffs chose treatment from a chiropractor does not control the nature of the examination to be requested by a defendant, as plaintiffs' attorney suggested at one point with the insurer. Given the nature of the injuries, defendants may elect, as here, to have an orthopedist or other "qualified physician" examine the claimants and take the position that such an examination is appropriate given the nature of the claimed injuries. Plaintiffs have made no showing that an orthopedist was not "qualified" to conduct the examination. If plaintiffs challenge the medical qualifications of the physician selected by the insurer to conduct the examination, they have the burden to show the lack of medical qualification.

the complaint, we remand so that plaintiff can come forward within 30 days with a sufficient showing that there was a "qualified physician" in Parlin or in closer proximity thereto than Dr. Frank in Spotswood. In response, defendant can contend that the showing is inadequate or it can produce certifications and affidavits to the effect that Dr. Frank is a "qualified physician" in closest proximity to the plaintiffs' residence and that the selection of Dr. Frank as the "qualified physician to conduct the examination" should be sustained.

Remanded for further proceedings consistent with this opinion. No costs.