238 N.J. Super. 210 (1990)
569 A.2d 815
STACY A. KOWALESKI, PLAINTIFF-RESPONDENT,
v.
ALLSTATE INSURANCE CO., DEFENDANT-APPELLANT.
CARMEN FERNANDEZ, PLAINTIFF-RESPONDENT,
v.
ALLSTATE INSURANCE CO., DEFENDANT-APPELLANT.
MICHAEL A. MARRAZO, PLAINTIFF-RESPONDENT,
v.
ALLSTATE INSURANCE CO., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 20, 1989.
Decided February 5, 1990.
*211 Before Judges GAULKIN, DREIER and SCALERA.
Thomas F. McGuane argued the cause for appellant Allstate Insurance Co., (Carpenter, Bennett & Morrissey, attorneys; John E. Keale, of counsel, Thomas F. McGuane, on the brief).
John Paul Dizzia argued the cause for respondent Stacy A. Kowaleski (John Paul Dizzia, on the brief).
Howard Duff argued the cause for respondent Carmen Fernandez (Nemergut & Duff, attorneys; Howard Duff, on the brief).
Charles A. Zahn argued the cause for respondent Michael A. Marrazo (Shore & Zahn, attorneys; Charles A. Zahn, on the brief).
Francis & Berry, attorneys, filed a brief Amicus Curiae on behalf of the New Jersey Automobile Full Insurance Underwriting Association (Hugh P. Francis, of counsel; Joan Bannan Lorio, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant Allstate Insurance Co. has appealed from three adverse summary judgments entered by two Middlesex County Superior Court judges. We have been informed that there have been several additional decisions concerning similar issues in Middlesex County and elsewhere, all unreported, consistent with and opposed to the statutory interpretation advanced by the trial judges in the cases before us. As the three cases before us all raise similar issues, we have consolidated them for the purpose of this opinion.
In each of the cases before us the respective trial judge determined that an insurer's failure to comply with the notice requirements set forth in N.J.S.A. 39:6A-5(b) acts as a bar to the insurer's right to contest payment for medical bills submitted under the Personal Injury Protection (PIP) section of defendant's automobile insurance policy. See N.J.S.A. 39:6A-4a. *212 In order to provide the factual basis for our interpretation of the statute, we will briefly describe the underlying facts in each of the three cases.

Kowaleski claim:
On November 2, 1984, the plaintiff, Stacy A. Kowaleski, was injured in an automobile accident. Allstate, as the servicing carrier for the New Jersey Automobile Full Insurance Underwriting Association (JUA), provided PIP coverage and paid many of plaintiff's medical bills. The problem commenced on January 21, 1986 when Ms. Kowaleski began to incur further and substantial medical expenses. On that date she consulted Ira M. Klemons, D.D.S. concerning pains she claimed to be experiencing in or near her face and neck and temporomandibular joint (TMJ). Dr. Klemons and his associate, Janet Crain, D.M.D. treated Ms. Kowaleski at the TMJ Trauma and Headache Center operated by them in Parlin, New Jersey, for TMJ problems from January 1986 to May 16, 1986. They also obtained diagnostic electromyography from Martin Feldman, M.D. Allstate asserts that discovery has revealed that they regularly referred patients to Dr. Feldman for electromyography, and that myelogram readings were rendered by Dr. Feldman or his corporation on one of four duplicated reports, all of which recommended additional treatment. Ms. Kowaleski submitted the bills to Allstate with a report indicating that her need for TMJ treatment was causally related to her November 2, 1984 car accident. Soon after receipt of most of those bills, Allstate by letter dated April 29, 1986 informed Ms. Kowaleski that she should schedule an "independent" medical exam with Robert Bonda, D.M.D. The letter informed her that Allstate's
doctor will examine you under the `No Fault' statute. This examination is necessary in order for us to consider payment of benefits under No Fault.
Ms. Kowaleski, however, did not schedule the examination, and Allstate sent a second similar notice requesting her to call Dr. Bonda to arrange an appointment for an examination. This letter also was disregarded. By letter dated July 8, 1986 Allstate advised Ms. Kowaleski that it had suspended her *213 benefits pending an examination with Dr. Bonda. Finally on July 31, 1986 she submitted to the examination.
Dr. Bonda concluded that none of plaintiff's TMJ treatment was for a condition causally related to the November 2, 1984 accident. By letter dated September 3, 1986 Allstate enclosed a copy of Dr. Bonda's report and informed Ms. Kowaleski that it "will not honor any bills for treatment given by Dr. Klemons, Crain or Feldman or for any costs dealing with TMJ care."
One month later Ms. Kowaleski filed this action to compel Allstate to pay any present unpaid and future medical bills incurred as a result of her accident, as well as counsel fees, costs, and interest. Allstate timely filed its answer denying the allegations of the complaint and plaintiff moved for summary judgment.
The trial judge determined that:
The statute says that a carrier has 30 days in which to deny the claim and give their reasons or they can ask for a forty-five day extension within that 30 days and in both instances they have to give the reasons for this and they did not, in fact, do it and they're absolutely bound by the statute which is 39:6A-5.
He therefore precluded Allstate from further contesting these bills. Judgment was thereafter entered in the sum of $1,925 plus interest, costs and attorneys' fees. After Allstate's unsuccessful motion to vacate the order for summary judgment and plaintiff's successful application to fix the amount of counsel fees and interest, judgment was entered in the amount of $3,752.01.

Fernandez claim:
On November 5, 1986, plaintiff Carmen Fernandez received injuries in an automobile accident. As in the Kowaleski case, Allstate as servicing carrier for the JUA paid Ms. Fernandez's medical bills from November 19, 1986 through January 29, 1987. On February 4, 1987 she allegedly incurred additional medical expenses for treatment by Dr. Klemons for TMJ problems. The treatment continued through June 6, 1987, and bills for the TMJ treatment at the TMJ Trauma and Headache *214 Center and for diagnostic x-rays by a Dr. Ashendorf were first received by Allstate on March 11, 1987. Although plaintiff contends that she submitted to a PIP examination by an Allstate orthopedist who diagnosed cervical sprain and TMJ Syndrome (causally related to the accident), the record before us contains no reference to this examination.
By letter of April 6, 1987 Allstate informed Ms. Fernandez that an out-of-county examination had been arranged for her by Dr. Rauof Mansour on April 25, 1987. Plaintiff's attorney, however, objected to the location of the examination and contended that it must be given locally.[1] Allstate nevertheless informed plaintiff that if she did not attend the examination, benefits would be suspended. Plaintiff filed her complaint on August 28, 1987, but on the return date of an order to show cause, agreed to submit to the examination by Dr. Mansour. The examination report stated that
there is no objective evidence presented to show that [Ms. Fernandez] required ... any dental services by any dentist.... [T]here is no disability and there is no anticipation of any as a result of the 11/5/86 [motor vehicle accident].
The Fernandez case was consolidated with six other matters involving treatment at the TMJ Trauma and Headache Center. The trial judge [not the judge who had decided the Kowaleski case] granted the consolidation motions and found that Allstate was absolutely responsible for the bills at issue because it had failed to deny responsibility for payment within the period fixed by N.J.S.A. 39:6A-5b. Based upon this decision, a third judge, after reviewing the affidavit supporting counsel fees, awarded $2,500 in attorneys' fees in addition to the judgment for the payment of bills plus interest.

*215 Marrazo claim:

Plaintiff Michael Marrazo was injured on May 2, 1985 in an automobile accident, and, again, Allstate as servicing carrier for the JUA made PIP payments for hospital and doctors' bills. On July 11, 1985, however, Mr. Marrazo incurred additional medical bills continuing through October 1, 1985 for TMJ treatment at the same TMJ Trauma and Headache Center. The bills totalled $7,893. Prior to the first submission of bills, Allstate informed Mr. Marrazo that it had arranged for an examination by Marvin J. Ladov, D.D.S. The doctor's report was submitted nearly three months later, followed by a supplemental report five weeks after the first. Dr. Ladov concluded that he
would recommend no payment at the present time for all treatment rendered the patient following August 2, 1985.... It is my opinion that this treatment was excessive and probably was un-necessary [sic].
Based upon this letter, Allstate paid Dr. Klemons $4,511 representing the full amount of all bills submitted through August 2, 1985 and denied the balance of plaintiff's claim. Mr. Marrazo filed his complaint to compel payment of the balance of the TMJ bills, and the matter was consolidated with the other cases noted in the discussion of the Fernandez matter. Summary judgment was entered, including counsel fees of $1,407.25.
Allstate filed a timely appeal from all three of these determinations.
N.J.S.A. 39:6A-5b and c provide in part:
b. Personal injury protection coverage benefits shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same ...; provided, however, that any payment shall not be deemed overdue where within 30 days of receipt of notice of the claim, the insurer notifies the claimant ... in writing of the denial of the claim or the need for additional time, not to exceed 45 days, to investigate the claim, and states the reasons therefor....
c. All overdue payments shall bear interest at the percentage of interest prescribed in the Rules Governing the Courts of the State of New Jersey for judgments, awards and orders for the payment of money. All automobile insurers shall provide any claimant with the option of submitting a dispute under this section to binding arbitration....
*216 The issue in this case is whether, when the benefits become "overdue," the insurer loses its right to contest the payments and must pay the same plus the interest provided in N.J.S.A. 39:6A-5c, or whether the payment of interest is the sole "penalty" incurred by the insurer by failing to follow the statutory procedure requiring prompt payment or denial of the claim.
These statutes must be read in conjunction with N.J.S.A. 39:6A-2e and 4. Section 2e, in defining medical expenses, uses the language "... medical treatment ... rehabilitation services, x-ray and other diagnostic services ... and other reasonable and necessary expenses resulting from the treatment prescribed." (Emphasis supplied). Section 4 requires the PIP carrier to make "[p]ayment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident." (Emphasis added). Allstate contends that it had a right under section 2e to challenge whether the expenses were reasonable and necessary, and under section 4 to test plaintiffs' claims that the bills submitted were reasonable and that the injuries for which the claims were made had in fact been caused by the automobile accidents.
Allstate further notes that there is no time limit placed upon its right to advance such claims, and that sections 5b and c merely provide that if it has not acted before a request for payment becomes "overdue," the insurer is statutorily responsible only for interest.[2]
We have repeatedly stated that the "no fault" law was established by the Legislature to insure "prompt payment of medical expenses, lost wages, essential services, survivor benefits *217 and funeral expenses ... without having to await the outcome of protracted litigation" for those claimants covered by the Act. Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475, 479, 366 A.2d 345 (App.Div. 1976), quoted in Milcarek v. Nationwide Ins. Co., 190 N.J. Super. 358, 366, 463 A.2d 950 (App.Div. 1983). We also acknowledge the direction of the Legislature that the No Fault Act, including the PIP benefits, "shall be liberally construed so as to effect the purpose thereof." N.J.S.A. 39:6A-16. Nevertheless, we cannot strain the Act beyond the clear language of the Legislature. See Gambino v. Royal Globe Ins. Co., 86 N.J. 100, 105-108, 429 A.2d 1039 (1981).
We held in Milcarek that remedies (there, punitive damages) beyond those specified by the Legislature could not be imposed by the courts.[3] 190 N.J. Super. at 365-369, 463 A.2d 950. We stated the issue to be
whether, in the specific context of a PIP claim, the provision for ... interest on all overdue payments... was intended as the exclusive remedy for an aggrieved plaintiff, thereby precluding an award of punitive damages. [Id. at 365, 463 A.2d 950].
Kubiak v. Allstate Ins. Co., 198 N.J. Super. 115, 486 A.2d 879 (App.Div. 1984), certif. den. 101 N.J. 290, 501 A.2d 952 (1985), reiterated Milcarek's statement that "the right to interest on overdue payments ... and the ability under R. 4:42-9(a)(6) to recover counsel fees if successful in the action should sufficiently guard against ... protracted aggravated consequences ... of an insurer's failure to pay." 198 N.J. Super. at 119-120, *218 486 A.2d 879. No mention was made in either Milcarek or Kubiak of a claimant's absolute right to payment.
Nowhere has the Legislature expressed an intention that the failure to accept or deny the claim, rendering it "overdue," would preclude a later good faith contest of the claim. To hold otherwise would lead to anomalous results. If a claim is mistakenly denied, the claimant could be made whole in an action such as those brought by the three plaintiffs in this case, who will be held harmless by the payment of interest and counsel fees.[4]
Plaintiffs also claim that by not paying or denying the claims before they became overdue, the insurer implicitly waived its right to contest the reasonableness or necessity of the charges. *219 However, "waiver" is "the intentional relinquishment of a known right." East Orange v. Board of Water Commissioners, 41 N.J. 6, 17, 194 A.2d 459 (1963). Proof of such intention is totally absent in the cases before us.
Lastly, Allstate contends that the counsel fees awarded against it were unreasonable. Since we have determined that the judgments should not have been entered, and absent an evidentiary hearing or summary judgment motion to determine whether an issue of fact is presented, any assessment of counsel fees was, at best, premature and must be vacated.
The summary judgments appealed from are reversed and the matters are remanded to the Law Division for further proceedings.
NOTES
[1] N.J.S.A. 39:6A-13d requires such an examination to "be conducted within the municipality of residence of the injured person ... [or if there is] no qualified physician ... within the municipality ... in an area of the closest proximity to the injured person's residence." Cf. Benyola v. Allstate Ins. Co., 237 N.J. Super. 472, 479-482, 568 A.2d 134, 138-140 (App.Div. 1990).
[2] In addition, in PIP cases, the Supreme Court has relaxed the prohibition against the recovery of counsel fees in first party coverage cases, (see R. 4:42-9(a)(6)), and permitted such recovery of counsel fees on a PIP claim. Darel v. Pennsylvania Mfrs. Ass'n Ins. Co., 114 N.J. 416, 420, 555 A.2d 570 (1989); Maros v. Transamerica Ins. Co., 76 N.J. 572, 579, 388 A.2d 971 (1978); and see discussion in Ellmex Const. Co., Inc. v. Republic Ins. Co., 202 N.J. Super. 195, 214, 494 A.2d 339 (App.Div. 1985), certif. den. 103 N.J. 453, 511 A.2d 639 (1986).
[3] Furthermore, by unjustified denial of claims, an insurer risks administrative sanctions. As we noted in Milcarek:

N.J.S.A. 17:29B-4(9)(d) declares the general business practice of an insurance company of `[r]efusing to pay claims without conducting a reasonable investigation based upon all available information' to be an unfair claim-settlement practice. Of course, such alleged violations are resolved before the Commissioner of Insurance and the monetary penalty provided would not go to the parties aggrieved by the insurer's actions.... Nevertheless, this act punishes insurance companies for unreasonably denying claims, thereby also serving as a deterrent. [Id at 368, 463 A.2d 950].
[4] We realize that plaintiffs may be put to the further expense of having to present expert witnesses concerning the issues of causation and reasonableness. We are aware that another part of this court in Helton v. Prudential Property & Cas. Ins. Co., 205 N.J. Super. 196, 203-205, 500 A.2d 717 (App.Div. 1985), has opined that such fees are not reimbursable. The Helton court determined that since the right to recover PIP benefits is statutory, the court could not add reasonable expert witness fees to plaintiff's recovery as an element of costs. We note, however, that the recovery of expert witness fees, much the same as the recovery of the counsel fees permitted in Darel v. Pennsylvania Mfrs. Ass'n Ins. Co., supra, and Maros v. Transamerica Ins. Co., supra, could be viewed not to be additional elements of a plaintiff's damage claim, (similar to the punitive damages rejected in Milcarek). Rather such expenses might be considered elements of the costs of proving that claim, thus subject to the discretionary award by a court. The Legislature has recognized this distinction in N.J.S.A. 22A:2-8 where, after listing specific costs which may be awarded, included:

[s]uch other reasonable and necessary expenses as are taxable according to the course and practice of the court or by express provision of law, or rule of court.
The Supreme Court in In re Caruso, 18 N.J. 26, 39-40, 112 A.2d 532 (1955) noted that in litigation involving the validity of a will,
where expert opinion evidence is essential to the resolution of the issue, a reasonable allowance for the service is includable in the taxed costs.
See also the extended discussion by Judge Haines in Bung's Bar & Grille, Inc. v. Florence Tp., 206 N.J. Super. 432, 478-481, 502 A.2d 1198 (Law Div. 1985), in which he noted that this principle of Caruso can also be applied in the Law Division. Id. at 481, 502 A.2d 1198.