256 N.J. Super. 134 (1992)
606 A.2d 839
NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, PLAINTIFF-APPELLANT,
v.
ANNABEL JALLAH, DEFENDANT-RESPONDENT.
NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, PLAINTIFF-APPELLANT,
v.
ERNEST GIRON, DEFENDANT-RESPONDENT.
NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, PLAINTIFF-APPELLANT,
v.
GERALD DENOT AND MARIE C. DENOT, DEFENDANTS-RESPONDENTS.
NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, PLAINTIFF-APPELLANT,
v.
ERIC WHITE, DEFENDANT-RESPONDENT.
NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, PLAINTIFF-APPELLANT,
v.
INEZ GONZALEZ AND CARMEN IRIZARRY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 1992.
Decided April 27, 1992.
*135 Before Judges GAULKIN, BRODY and LANDAU.
Richard P. Cushing argued the cause for appellants (Gebhardt & Kiefer, attorneys, Sharon Handrock Moore, on the brief).
*136 Jerem M. Gordon argued the cause for respondents (Joseph D. Kaplan & Son, attorneys, Jerem M. Gordon, on the letter brief).
The opinion of the court was delivered by LANDAU, J.A.D.
We consider, in this consolidated opinion, the five above-captioned appeals. While not entirely congruent in their underlying facts or policy provisions[1], each involves the common question whether the New Jersey Full Insurance Underwriting Association (JUA) can, following its termination of Personal Injury Protection (PIP) benefit payments upon determining that further treatment is unnecessary or unjustifiable[2], require the PIP claimant to submit to an examination or statement under oath. In each case, JUA brought a declaratory judgment action (N.J.S.A. 2A:16-50, et seq.) in the Law Division, Mercer County, initially seeking a declaration that the insured materially breached the contract of insurance by failing to submit to a statement under oath as provided for under the contract, that the insurer's ability to defend in arbitration had been prejudiced, and that the contract thus had been rendered void. JUA later modified informally the latter request, seeking to render void only the PIP portion of coverage under the policies.
The complaints indicate that the insureds had already demanded arbitration in the American Arbitration Association *137 under their policies when the examination under oath requests were made.[3]
After considering cross-motions for summary judgment, the motion judge denied JUA's motions, and dismissed its complaints, relegating the parties to the arbitrator for discovery rulings, as well as for the coverage determination. JUA appealed. We reverse because the judgments under review too narrowly construe the purpose of examination-under-oath requirements, and conflict with duties statutorily imposed upon automobile insurance carriers to implement the important public policy against insurance fraud.

The Arguments
JUA urges that failure of the insureds to comply with its request for examination under oath, even though made after termination of benefits and after the insureds demanded arbitration, rendered void at least the PIP coverage agreements, if not the entire policies. In consequence, JUA argues, there can be no rights to further PIP benefits.
JUA says that a duty to comply with its requests for examination under oath arises under all five policies. The Allstate forms contain only a general requirement that a person seeking coverage must "cooperate" in any investigation by the carrier. The Selective and State Farm policies contain, in addition to the cooperation clause, a specific requirement that persons seeking coverage must submit to examinations under oath.
JUA also relies upon N.J.S.A. 39:6A-13, which it reads as making clear the responsibility of injured claimants to participate in any discovery deemed necessary to reasonably prove the claimant's injuries, costs and losses.
*138 Respondents essentially contended below and here contend that once JUA unilaterally terminated PIP benefits to each of the defendants based upon its investigation, an adversarial relationship came into existence rendering obsolete any rights to an examination or statement under oath. Thereafter, respondents argue, the requests for such statements or examinations became mere discovery requests to be presented in accordance with the rules of the forum chosen for claim.
As they have availed themselves of the statutory option to demand an AAA arbitration forum (N.J.S.A. 39:6A-5(c)), respondents say such requests for discovery should be subject only to the discretion of the arbitrator under Rule 19 of the "New Jersey No-Fault Automobile Arbitration Rules," effective January 1, 1984. In their view, the judicial policy of deferring liberally in favor of arbitrability, see e.g., Moreira Constr. Co., Inc. v. Wayne Tp., 98 N.J. Super. 570, 576, 238 A.2d 185 (App.Div.), certif. den., 51 N.J. 467, 242 A.2d 15 (1968), supports the dismissal of JUA's action.

The Motion Judge's Opinion
The motion judge rendered an opinion in support of his decision. He noted that in each case the claimant continued treatments after termination of benefits, filed for arbitration under N.J.S.A. 39:6A-5(c), and was then asked by JUA to provide a statement or examination under oath. He correctly recognized that by reason of the cooperation clause alone, as well as under the more specific statement-under-oath requirements of the State Farm and Selective Insurance forms, a PIP claimant could be required to make a statement under oath. The judge also recognized that N.J.S.A. 39:6A-13 provides a basis for such requirement.
The judge concluded, however, that:
[O]nce the insurer terminates coverage, it is not entitled to a statement under oath pursuant to the policy because this is a mechanism used to determine coverage. Since the insurer has terminated coverage the statement under oath is obsolete. The same rationale applies to N.J.S.A. 39:6A-13(g). [I]t only *139 provides for pre-termination discovery so that the insurer has all the information available to evaluate an insured's PIP claim and to determine whether such payments should or should not be made.
Adopting respondents' contentions, the motion judge held that the liberal construction mandate of the No Fault Act, N.J.S.A. 39:6A-16, and the policy which favors both arbitration and prompt payment of PIP claims, relegated JUA to the arbitrator for discovery.

State Policy and Insurers' Investigative Responsibility
We begin our review by noting that under N.J.S.A. 39:6A-13, an insurer's ability to request examination as to physical or mental condition does not automatically terminate upon cessation of benefits. N.J.S.A. 39:6A-13(d), for example, permits medical examination if "material to any claim that has been made or may be made for past or future personal injury benefits." Id. (emphasis supplied). The statute's use of the disjunctive makes it clear that the right of medical inquiry is not limited to the question whether benefits will be continued in the future, but may be employed to determine whether benefits already paid were warranted. Thus, the broad denial of "discovery" once arbitration has been demanded because it is a mechanism to determine coverage, does not accord with the thrust of N.J.S.A. 39:6A-13.
We recognized in Elkins v. New Jersey Mfrs. Ins. Co., 244 N.J. Super. 695, 583 A.2d 409 (App.Div. 1990), that unjustified medical expenses have the effect of subverting the purpose of the no-fault statute. Id. at 701, 583 A.2d 409. Earlier, in State Farm Mut. Auto. Ins. Co. v. Dalton, 234 N.J. Super. 128, 134, 138, 560 A.2d 683 (App.Div. 1989), certif. den. 117 N.J. 664, 569 A.2d 1356 (1989), cert. denied, 493 U.S. 1078, 110 S.Ct. 1131, 107 L.Ed.2d 1037 (1990), we held that where circumstances were such as to demonstrate even a vulnerability to fraud, non-oppressive discovery by a PIP carrier was warranted to vindicate both its own and the public interest.
*140 This concern with the potential for fraudulent claims has been embodied in recent legislation which cannot be ignored when interpreting the cooperation and statement-under-oath policy clauses and the discovery-of-fact provisions of N.J.S.A. 39:6A-13.
The "Fair Automobile Insurance Reform Act of 1990," N.J.S.A. 17:33B-1, et seq., requires insurers writing private passenger automobile insurance to develop and implement plans for protection against fraudulent insurance claims and practices. See, e.g., N.J.S.A. 17:33B-2h(8), 17:33B-46; and Assembly Appropriations Committee Statement to Assembly Bill No. 1, 1990, later enacted as L. 1990, c. 8 (the "FAIR" act). Under N.J.S.A. 17:33B-46, every private passenger automobile insurer must file for approval by the Commissioner of Insurance its fraud prevention plan, implementation of which must be monitored by the Division of Insurance Fraud Prevention. Proposed rules have been promulgated by the Department of Insurance which would place responsibility upon insurers to maintain special full-time investigation units, to identify and pursue suspicious claims, and to adopt "fraud profiles" or indicators for automobile theft, physical damage and bodily injury claims fraud. 23 N.J.R. 3236-3237 (1991).
Automobile insurers have also been given statutory duties respecting the Unsatisfied Claim and Judgment Fund (UCJF) potential for exposure when medical expense benefits under N.J.S.A. 39:6A-4a exceed, or may exceed, $75,000. N.J.S.A. 39:6-73.1 gives UCJF the responsibility for PIP payments over $75,000 and up to $250,000. Automobile insurers are required by N.J.A.C. 11:3-28.1 to notify UCJF when the potential PIP exposure may exceed $75,000. Significantly, N.J.A.C. 11:3-28.5 provides:
(a) An automobile liability insurer shall be required to discharge its duty of investigating claims where the potential exposure to the insurer exceeds $75,000. Said insurer's duty and obligation with regard to claim handling shall exist and continue to exist notwithstanding this rule. The Executive Director may direct such investigations as often as he or she deems necessary. All expenses relating to the investigation of claims, including expenses for medical *141 examinations, file maintenance and cost containment measures, are the responsibility of the automobile liability insurer.
(b) The failure to properly discharge the duty of investigating a claim may result in the imposition of a penalty, to be determined by the UCJF Board of Directors, against the insurer's request for reimbursement.
It is apparent that when pursuing claim investigations by invoking the cooperation and statement-under-oath provisions of the respective policies, JUA's requests must be deemed to transcend narrow categorization as discovery in arbitration which is subject to the sole discretion of an arbitrator. The investigatory duties imposed upon passenger automobile insurers are unambiguous, continuing, and mandatory. They include acquisition of information which may be used to compile patterns of suspect claims involving, e.g., given care providers, or given geographical areas. An investigation may also be based upon profiles previously compiled.
Subject to ordinary standards of reasonableness and fairness, we hold that an automobile PIP insurer is entitled to examination under oath of a person who has received or seeks to receive PIP payments, even if it has previously terminated payments and the insured has demanded arbitration.
We emphasize that in so holding, we imply no fraud by any of the respondents. Each of the claims may well be meritorious in its entirety. Indeed, we have deliberately refrained from discussing the details of the claims because our analysis is based upon law, and is not fact-specific. Review of the special facts in any one case may be appropriate, however, when fashioning a remedy for non-compliance.

Remedy in the Present Cases
It was conceded at oral argument that JUA's requested remedy of total denial of future benefits may be unduly harsh to impose as a general rule for a deserving claimant who declined to give a statement under oath after termination of *142 benefits by JUA. Imposition of such a draconian remedy goes beyond the demand of the respective complaints for declaratory relief filed in these cases.
In Kowaleski v. Allstate Ins. Co., 238 N.J. Super. 210, 569 A.2d 815 (App.Div. 1990), where a carrier breached its obligations under the insurance contract, we held that the insurer did not lose its right to contest the payments, but was subject to an interest penalty. Id., 238 N.J. Super. at 216-219, 569 A.2d 815. Similarly, where an insured party has failed to comply with the examination under oath obligation, the liberal construction provision of the No-Fault act, N.J.S.A. 39:6A-16 et seq., prompts us to hold that the remedy of total bar of benefits recovery should be reserved for egregious breaches of that duty. As respondents did not have the benefit of this decision, we do not consider their conduct egregious, absent willful and continuous refusal to submit to examination. Our decision does not affect the requests for arbitration or the proceedings subsequently conducted.

Conclusion
We reverse and remand for entry of summary judgment orders which require compliance with JUA's examination-under-oath requests in conformity with the statutory duties and contractual rights enunciated above.
NOTES
[1] There were three different servicing carriers. The Denots and Giron were insured under policies issued by Allstate; Gonzalez, Irizarry and White under Selective Insurance forms; and Jallah under a State Farm policy.
[2] Those determinations were made upon the basis of information from independent medical examination, peer review and audit. At oral argument, it was represented that "profile" analysis played a role in JUA's decision to pursue investigations.
[3] The motion judge and the statements of fact in the briefs filed indicate that as to White, the insurer's request for examination under oath preceded his demand for arbitration. However, the record on appeal contains contrary indications. We do not regard the variation in time sequence as material to our decision.