**NOT PRECEDENTIAL**

**UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

No. 17-2604

LEXPATH TECHNOLOGIES HOLDINGS, INC.,

Appellant

v.

BRIAN WELCH; WELCH TECHNOLOGY SERVICES, LLC

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 3-13-cv-05379)
District Judge: Honorable Peter G. Sheridan

Submitted under Third Circuit L.A.R. 34.1(a)
on April 17, 2018

Before: GREENAWAY, JR., RENDELL, and FUENTES, *Circuit Judges*

(Opinion filed: July 30, 2018)

O P I N I O N*

**RENDELL**, *Circuit Judge*:

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Defendant-Appellee, Brian Welch, left his employment as a network engineer with Lexpath Holdings, Inc. ("Lexpath") to form his own company, Welch Technology Services, LLC ("WTS"). Lexpath sued Welch and WTS contending that, among other things, Welch misappropriated trade secrets and confidential information. The jury found for Welch and WTS on all counts. On appeal, Lexpath raises a plethora of issues, challenging several of the District Court's evidentiary rulings and denial of summary judgment in its favor, as well as the jury's verdict. For the following reasons, we will affirm.

## I. BACKGROUND

### A. Facts

Welch worked for Lexpath as a network engineer. He did not sign a non-compete or non-disclosure agreement with Lexpath. During his employment there, Welch serviced three primary clients: Liberty Transportation Group ("Liberty"), EIMC, LLC ("EIMC"), and Mental Health Association of New Jersey ("MHANJ").

Welch left Lexpath on August 2, 2013. However, before resigning, he took several steps to establish his new business, WTS. Welch officially formed WTS on June 21, 2013. On July 24, 2013, Welch spoke to his business contacts at Liberty, informing them of his intentions to leave Lexpath and form WTS. Liberty requested a rate sheet from Welch, which he provided on July 31, 2013. Moreover, on August 1, 2013, Welch spoke with his contact at EIMC about leaving Lexpath and forming WTS. However, all of Welch's other contact with EIMC was done after he left Lexpath. Finally, in his last week of employment with Lexpath, Welch informed an administrative assistant at

2

MHANJ, Katie Koskie, of his intention to leave Lexpath. On August 2, 2013, Welch told one of Lexpath's principals, Martin Tuohy, that he was resigning and starting WTS. Welch told Tuohy that he solicited business from Liberty and EIMC, and he thought they would likely leave Lexpath for WTS. Within a few days of Welch's resignation, Liberty and EIMC moved their business to WTS.

After Welch's resignation on August 2, 2013, he kept his work laptop, which he had also used for personal use. Welch used the laptop after his resignation, but the parties dispute whether he had permission to do so. On August 6, 2013, Lexpath's counsel sent Welch a letter outlining the claims that Lexpath was considering bringing against Welch and WTS. Shortly thereafter, on August 13, 2013, Lexpath's counsel contacted Welch to inform him that Lexpath intended to initiate litigation, and to request the return of the laptop. Welch returned the laptop, through counsel, about seven months later.

For litigation support, Lexpath retained the services of Digital4NX to investigate whether there was misappropriation of trade secrets and other confidential information. On August 13, 2013, the same day that Lexpath told Welch it would sue, Welch ran a program called CCleaner on the laptop to permanently delete files. Upon examining the laptop, Digital4NX discovered that approximately 54,000 files had been deleted. However, the forensic expert testified that he could not determine what types of data had been deleted from the laptop.

**B. Procedural History**

3

On September 9, 2013, Lexpath filed suit against Welch and WTS. In its complaint, Lexpath stated the following nine claims: (1) violation of the Computer Fraud and Abuse Act ("CFAA) (18 U.S.C. § 1030); (2) breach of duty of loyalty; (3) misappropriation of trade secrets; (4) unfair competition; (5) breach of the duty of implied covenant of good faith and fair dealing; (6) tortious interference with prospective economic advantage; (7) disparagement; (8) violation of New Jersey Trade Secrets Act (N.J. Stat. Ann. §§ 56:15-1 to -9 (West 2012)); and (9) violation of the New Jersey Computer Related Offenses Act ("CROA") (N.J. Stat. Ann. § 2A:38A-1 (West 2010)). Welch and WTS then counterclaimed seeking an award of damages for attorneys' fees and costs incurred in defending against the trade secrets claim, arguing it was made in bad faith.

Following the completion of discovery, Lexpath moved for summary judgment and spoliation sanctions in connection with Welch's handling of the laptop. In support of its motion, Lexpath submitted affidavits from Peter Reganato and Alan Feldman repeating statements made by Liberty's president, Donald Lusardi, that Welch had made negative remarks to him about Lexpath.[1] The District Court granted Welch's motion to exclude Reganato and Feldman's testimony as inadmissible double hearsay. The Court also entered an order ("Spoliation Order") granting Lexpath's motion for spoliation, holding that it would "instruct the jury that they *may* presume that the lost information was unfavorable to Defendants." A. 1724.11 (emphasis added).

---

[1] The District Court later denied Lexpath's motion for reconsideration of this ruling.

Lexpath renewed its motion for summary judgment on the basis of "new facts adduced at the spoliation hearing." A. 2786. The District Court denied the motion, noting the overwhelming number of material facts at issue. Moreover, it noted that any factual determinations made in the Spoliation Order were solely for the purpose of spoliation sanctions and were not binding on the jury, nor did they take any issues away from the jury.

Before trial, Lexpath moved for the District Court to direct the jury to accept the findings of the Spoliation Order as conclusive. For their part, Welch and WTS moved for the Court to exclude the testimony of Koskie, the MHANJ employee. The Court denied Lexpath's motion, stating that it chose the least severe sanction by crafting an instruction would tell the jury a "paragraph or two about spoliation" and instruct that the jury may consider the lost information unfavorable to Welch. A. 3353. However, the Court granted Welch's motion, explaining that Koskie's testimony was irrelevant and would confuse the jury because Lexpath had not alleged any damages with regard to MHANJ.

At trial, during Lexpath's opening argument, counsel told the jury that "Mr. Welch destroyed evidence in the form of 53,000 computer files that were on a Lexpath laptop . . . . His Honor has already ruled on that and will instruct you that you may presume that the evidence he deleted would have been unfavorable to him." A. 3389. After opening arguments, the Court told the parties that it was "worried" that "the jury could have been left with the impression that the Court had made a decision on the facts" and that Lexpath's statement "gave the inference to the jury that . . . they should take this fact as being true." A. 3411–12.

5

The Court then issued a corrective instruction that:

> While the Court issued an order on spoliation, I did not make any final decisions about the facts, I just said that the information could be admitted into evidence. So, it's your job during the course of this trial to determine the weight and credibility of that testimony that you'll hear, and those types of issues are within your province to decide. So whatever you heard, I made a decision on admission of evidence . . . .

A. 3420.

Later on at trial, Lexpath called its forensic expert to testify about the laptop, the deleted files, and the CCleaner program. Before closing arguments, the Court told counsel that it "had doubts as to whether or not a presumption was warranted" after hearing the evidence, and that it would charge spoliation but not a presumption in Lexpath's favor. A. 4078–79. After some discussion, Lexpath's counsel requested that the Court "take the spoliation charge out of the instructions," A. 4081, which the Court did.

The jury found in favor of Welch and WTS on all counts, and determined that Lexpath had asserted its misappropriation of trade secrets claim in bad faith. At no time did Lexpath move for judgment as a matter of law under Federal Rule of Civil Procedure 50. This appeal followed.

## II. DISCUSSION

On appeal, Lexpath assigns numerous errors to the District Court before and at trial. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 & 1367, and our

6

jurisdiction flows from 28 U.S.C. § 1291. We review each of Lexpath's contentions in turn.

### A. Spoliation Instruction

We review the District Court's denial of an adverse inference instruction for abuse of discretion. *McMunn v. Babcock & Wilcox Power Gen. Grp., Inc.*, 869 F.3d 246, 268 (3d Cir. 2017). "[W]here there is evidence that one party has destroyed or altered evidence, the opposing party can obtain a "'spoliation inference,' that the destroyed evidence would have been unfavorable to the position of the offending party.'" *Id.* (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994)).

Lexpath contends that the District Court abused its discretion by telling counsel it would not give a spoliation instruction, reversing its previous ruling that it would instruct the jury that "they may presume that the lost information [on Welch's laptop] was unfavorable to Defendants." A. 1724. After hearing the evidence, the Court told the parties that a presumption was not warranted, citing a lack of testimony as to whether Lexpath was actually missing any pricing documents that could have been found on the laptop, and Lexpath's expert's testimony that the deleted files could have been for personal use. The Court told the parties that it would "charge[] spoliation, but I don't charge a presumption in favor of the plaintiff." A. 4079.[2] In response, Lexpath's counsel asked the Court to "take the spoliation charge out of the instructions." A. 4081.

---

[2] Although the details of the proposed charge are not in the record, we presume the Court meant that it would tell the jury that it was up to them to determine whether or not spoliation had occurred.

7

We conclude that there was no abuse of discretion when the Court: repeatedly made clear to the parties before and at trial that "it was up to the jury to find whether spoliation in fact occurred," A. 4081, denied Lexpath's pretrial motion to direct the jury to accept as conclusive the facts in the Spoliation Order, and then—at Lexpath's request—declined to give a spoliation instruction.

To begin, a district court's findings of fact in deciding a pretrial motion cannot foreclose a jury from making its own factual findings. *Cf. Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 552–53 (1990); *Berry v. United States*, 312 U.S. 450, 453 (1941) ("[Rule 50(b)] has not taken away from juries and given to judges any part of the exclusive power of juries to weigh evidence and determine contested issues of fact—a jury being the constitutional tribunal provided for trying facts in courts of law." (footnote omitted)).[3] The Spoliation Order merely stated that "the Court will instruct the jury that they may presume that the lost information was unfavorable to Defendants." A. 1724.11. This, the least-harsh form of spoliation instruction, would not have *required* the jury to presume the lost evidence was unfavorable. Nor did the Order state that the Court would instruct the jury that spoliation had, as a matter of law, occurred. Lexpath correctly notes that it did not assert, and therefore did not need to prove, a standalone tortious spoliation of evidence claim. But that did not absolve it of its burden to show the jury that Welch had control over the evidence and that he "intentionally or fraudulently lost or destroyed" it,

---

[3] We have not yet spoken to the proper "division of fact-finding" labor, *Nucor Corp. v. Bell*, 251 F.R.D. 191, 202 (D.S.C. 2008), between judges and juries when issuing a spoliation sanction. We need not resolve this question on this appeal, however, because we conclude that it was not an abuse of discretion to decline to give an adverse inference charge under these circumstances.

8

*Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir. 1983), if it wanted to rely on spoliation to prove its substantive claims. Otherwise, as the Court had never indicated that it would instruct the jury that as a matter of law, spoliation had occurred, there would be no facts for the negative presumption to work on. Indeed, the Court repeatedly reminded the parties before trial that "the facts should be tried by the jury." A. 3354.

Nor could Lexpath have reasonably been surprised by the Court's ruling that it would not instruct the jury that Welch had deleted evidence, when the Court admonished Lexpath's counsel for telling the jury in its opening statement that "Mr. Welch destroyed evidence . . . His honor has already ruled on that." A. 3389. The Court immediately told the parties its concern that "the jury could have been left with the impression that the Court had made a decision on the facts," A. 3411, and issued a corrective instruction to the effect that the Spoliation Order did not remove the factual issue of spoliation from the jury. Additionally, it was within the Court's discretion to revisit its prior ruling upon hearing the evidence presented at trial. *See In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) ("[A] trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result." (quoting *Swietlowich v. Cty. of Bucks*, 610 F.2d 1157, 1164 (3d Cir. 1979))).

We identify no abuse of discretion in declining, at the party's request, to give an instruction after so warning the parties about the jury's province to find facts regarding Welch's use of the laptop.

**B. Jury Verdict**

9

Lexpath next argues that the jury's verdict should be vacated because it was against the weight of the evidence and because Welch's counsel "admitted liability" in closing. We need not address the merits of the sufficiency of the evidence claim because Lexpath failed to follow the proper procedure to challenge the sufficiency of the evidence. A party urging a new trial on appeal must make a post-verdict Rule 50 motion. *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 402–03 (2006). Moreover, "[i]t is well settled that a party who does not file a Rule 50 motion for judgment as a matter of law at the end of the evidence is not thereafter entitled to have judgment entered in its favor notwithstanding an adverse verdict on the ground that there is insufficient evidence to support the verdict." *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 364 (3d Cir. 1999). Lexpath's failure to make a Rule 50 motion precludes it from challenging the sufficiency of the evidence on appeal.

Alternatively, Lexpath contends that Welch's counsel admitted that Welch breached his duty of loyalty. At closing, his counsel stated that, by providing a rate sheet to Liberty two days before resigning from Lexpath, Welch did something "that he wasn't supposed to do." A. 4118. Standing alone, however, this concession does not mean that the jury was irrational in finding for Welch on the breach of duty of loyalty claim. *See Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1168 (N.J. 2001) (stating that when deciding a breach of duty of loyalty, the jury must consider "the employee's level of trust and confidence, the existence of an anti-competition contractual provision, and the egregiousness of the conduct").

10

### C. Statements of Reganato and Feldman

Lexpath also assigns error to the District Court's ruling excluding statements by Donald Lusardi to Peter Reganato and Allan Feldman as inadmissible "double hearsay." We review a district court's evidentiary decisions for abuse of discretion and its legal interpretation of the Federal Rules of Evidence *de novo*. *United States v. Repak*, 852 F.3d 230, 240 (3d Cir. 2017). We generally review a district court's denial of a motion for reconsideration for abuse of discretion, but our review is plenary "if the court's denial was based upon the interpretation and application of a legal precept." *Koshatka v. Phila. Newspapers, Inc.*, 762 F.2d 329, 333 (3d Cir. 1985). Breaking down the facts into their most basic form, we identify no abuse of discretion where the District Court denied admission of testimony from two individuals that a third, non-testifying individual told them that a fourth individual made disparaging remarks about the plaintiff.

Hearsay is an out-of-court statement offered for its truth. Fed. R. Evid. 801(c). At trial, Lexpath sought to introduce testimony from Reganato and Feldman that Lusardi told them that Welch made negative statements about Lexpath. His statements (repeated by Lusardi to Reganato and Feldman) were allegedly to the effect that Lexpath was incapable of handling the accounts following Welch's departure. The District Court determined this was double hearsay, which could only be admitted if each statement fit into a hearsay exception. Fed. R. Evid. 805. The Court concluded that there was no relevant exception for the second layer of hearsay (Lusardi's statements to Reganato and Feldman). The Court then denied Lexpath's motion to reconsider.

11

Even assuming, as Lexpath avers, that Welch's statements are not hearsay because they were not being offered to prove their truth (that Lexpath could not handle the accounts without Welch), but rather for the fact that Welch made the statements to Lusardi at all, that only takes care of the first level of hearsay. Lusardi's statements to Reganato and Feldman would still need to fit under a relevant exception to be admissible.

According to Lexpath, Lusardi's statements show his state of mind and motive when he decided to move Liberty's business—specifically, that he credited Welch's negative remarks about Lexpath and thought he had no choice but to go with Welch. *See* Lexpath Br. at 32–33 (citing Fed. R. Evid. 803(3)). But the conversations were not contemporaneous with the decision to move Liberty's business. Feldman said his conversation with Lusardi happened at least three months later, and Reganato's conversation occurred at least a week later. Admitting these statements would therefore have run afoul of the Rule 803's prohibition on "including a statement of memory or belief to prove the fact remembered or believed." Fed. R. Evid. 803(3). Likewise, Lexpath's contention that the statements should have been admitted under Rule 807(a)'s residual exception is without merit because they lack the exceptional indicia of trustworthiness required.

### D. Summary Judgment

Our review of the District Court's denial of summary judgment is plenary, and we apply the same test as the District Court did. *Koshatka*, 762 F.2d at 333. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the

12

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018).

Lexpath moved for summary judgment on its CFAA and CROA claims multiple times. The District Court denied the motions, but did not issue a memorandum in either instance. On appeal, Lexpath contends the District Court "erred in failing to recognize that the determinations made in the Spoliation Order constituted law of the case." Lexpath Br. at 36. Lexpath argues that summary judgment was appropriate because Welch violated both the CFAA and CROA when he knowingly ran CCleaner on the laptop after the end of his employment with Lexpath. For the following reasons, we disagree.

### 1. Summary Judgment on CFAA Claim

The District Court properly denied Lexpath's motion for summary judgment with respect to its CFAA claim. The CFAA permits civil recovery against a defendant who, *inter alia*, "[i]ntentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer," 18 U.S.C. § 1030(a)(2), or who "knowingly causes the transmission of a program, information, code, or command, and as a result, intentionally causes damages without authorization to a protected computer," *id.* § 1030(a)(5)(A).

Lexpath argues that summary judgment was appropriate because Welch violated the CFAA when he knowingly ran CCleaner on the laptop after the end of his

13

employment. [4] Lexpath relies on the facts established in the Spoliation Order to show that Welch was not authorized to use the laptop. However, as explained above, such findings do not require a court to usurp the jury's role as the trier of fact, and Lexpath has pointed us to no authority suggesting otherwise. Moreover, the District Court determined that whether Welch had permission to access and clean the laptop was ultimately an issue of fact for the jury. For instance, after Welch left Lexpath, Tuohy asked for his continued assistance regarding business matters, which arguably authorized Welch to use the laptop. Given that there are genuine disputes of material fact as to whether Welch's use was authorized, the District Court properly denied Lexpath's motion for summary judgment.

### 2. Summary Judgment on New Jersey Computer Related Offenses Act Claim

The District Court properly denied Lexpath's motion for summary judgment as to its claim under CROA. To recover under CROA, a plaintiff must show he was "damaged in business or property by the defendant's violation of the act." N.J. Stat. Ann. § 2A:28A-3. We have said that a plaintiff must demonstrate damages under CROA to sustain a claim. *In Re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016). Expert fees paid in furtherance of litigation are considered litigation costs rather than

---

[4] Lexpath also asserts that its expenditures to support litigation claims against Welch can qualify as "loss" under § 1030(e)(11). While we have not spoken to whether litigation costs are compensable losses under the statute, we need not reach that question here because there was ample basis for the District Court to deny Lexpath's motion for summary judgment based on the genuine disputes of fact regarding other provisions of the CFAA.

damages.  *See Kowaleski v. Allstate Ins. Co.*, 569 A.2d 815, 819 n.4 (N.J. Super. Ct. App. Div. 1990).

Lexpath contends that summary judgment was appropriate because Welch violated CROA when he knowingly ran CCleaner on the laptop after the end of his employment. Lexpath bears the burden to demonstrate a violation.  *See P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 509 (3d Cir. 2005). However, instead of showing that Welch copied or misappropriated confidential information, Lexpath asked the Court to adopt as final, for summary judgment purposes, its findings of fact in the Spoliation Order.  Its state-law motion therefore suffers the same infirmity as its CFAA summary judgment motion, namely, that it asked the Court to rely on factual findings from the Spoliation Order and take that issue away from the jury. Moreover, Tuohy, in his deposition, stated that Welch gained his knowledge of confidential information through his employment at Lexpath, and so there was no need for Welch to take information from the laptop.  Finally, Lexpath's expenses were incurred to support its litigation claims, which are considered litigation costs rather than damages, and are not compensable losses under CROA. *See Kowaleski*, 569 A.2d at 819 n.4.  Accordingly, there is no basis to disturb the District Court's denial of summary judgment.

### E.  Koskie Testimony

We review the District Court's evidentiary rulings for abuse of discretion. *McMunn*, 869 F.3d at 268.  Before trial, the District Court granted Welch's motion *in limine* to exclude testimony from Katie Koskie of MHANJ, finding that it was irrelevant

15

and would confuse the jury because MHANJ remained a client of Lexpath's.  Lexpath sought to call Koskie to testify to "disparaging statements made by Welch regarding Lexpath and its employees."  A. 2910–11.

On appeal, Lexpath contends the exclusion was in error because Koskie's testimony was relevant to whether Welch was dissatisfied with his job at Lexpath and whether he was beginning to compete with them.  Perhaps.  But, as the District Court recognized, it is more likely that the jury would have interpreted it as propensity evidence or been unduly confused by its content.  This is especially so given that the testimony did not purport to offer relevant evidence of solicitation of MHANJ, let alone Liberty or EIMC.  The Court appropriately exercised its discretion to exclude evidence, of limited relevance, on the basis that it was offered to establish a party's propensity to commit bad acts.  *See* Fed. R. Evid. 404(a).[5]

### III.  CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment and orders.

---

[5] Because we find no basis to remand, we need not address Lexpath's recusal argument.

16